## HAZY v. WOITKE.

1. LIBEL—NONSUIT.

Although it is provided by the constitution that in all suits and prosecutions for libel the jury, under the direction of the court, shall determine the law and the facts, a judgment of nonsuit may be directed by the court in a libel case in like manner as in other civil actions.

2. SAME.

A false statement in writing published by the defendant that the plaintiff attempted to induce him to commit arson is libellous *per se*.

3. SAME.

One who by request procures another to publish a libel is answerable as though he published it himself. Such request need not be express, but may be inferred from the defendant's making the statement to the reporter of a newspaper, knowing that it is to be published; and it is not necessary that the communication be inserted *verbatim*, so long as the sense and substance appear in print.

4. SAME.

When, in an action for libel, it appears from the evidence that the plaintiff has been injured in his trade and business or credit and reputation by the publication, the question as to the extent of the injuries and the damages resulting therefrom should be submitted to the jury under proper instructions.

*Error to the District Court of La Plata County.*

THIS action was instituted in the district court by defendant in error, as plaintiff, against plaintiff in error, as defendant, for damages for libel and slander. The complaint contains two causes of action founded on libel and two causes for slander. The language in each cause of action, while in substance the same, is somewhat differently' expressed in the several causes of action. It appears from the record that plaintiff and defendant had a disagreement in reference to the payment for certain work done by defendant for plaintiff. This disagreement engendered bad feeling on the part of defendant, and, as a consequence thereof, the complaint charges that the defendant deliberately, wilfully and maliciously stated and caused to be published the statement that plaintiff had attempted to induce the defendant to burn his (plaintiff's) house, in order that he might procure the insurance upon the same.

In the first cause of action it is charged that the defendant said to William Bacon, D. C. Sargent, Joe Prewett and divers other persons, that the plaintiff had made the offer in the following language: " I will give you fifty dollars if you will burn my house, and give you the contract to build a new one." The second cause of action is substantially the same as the first, but the words are alleged to have been published in writing instead of orally, as in the first cause of action. In the third cause of action the defendant is charged to have slandered the plaintiff by the use of the following language: " A. Hazy offered me fifty dollars and the contract to build a new house if I would burn his house on Third street, in the city of Durango." In the fourth and last cause of action a similar statement is alleged to have been published by the defendant in the Durango Weekly Tribune, a newspaper published in the city of Durango, and of general circulation both in Durango and elsewhere in La Plata and adjacent counties.

For a first defense the defendant denies each and every allegation of plaintiff's complaint.

For a second defense to plaintiff's first cause of action, the

defendant admits using the language attributed to him, but pleads, in justification, that he made such statements only to D. C. Sargent, who was, at the time, marshal of the city of Durango ; and that he made the statement to the marshal in the discharge of his (plaintiff's) duty as a citizen, to secure the protection of the property of the good citizens of Durango from fire. He alleges that the house which the defendant desired him to burn was situate within twenty-five feet of other houses to which the fire was liable to be communicated.

The defendant, in justification of the statement charged to have been made to Joe Prewett, alleges that the latter was, at the time, a member of the firm of Prewett & Prewett, insurance agents, doing a general insurance business in the city of Durango, and that this firm had placed a large amount of insurance for plaintiff upon his house with companies for which they were acting as agents, and that the communication was so made to Mr. Prewett in confidence in order to protect the companies which held such insurance. The defendant denies that he ever communicated the alleged slanderous words to William Bacon, or to any other persons, as complained of in the first cause of action.

For a third defense to the first cause of action, the defendant avers the truth of the statements therein charged.

For a second and further defense to plaintiff's second cause of action, the defendant alleges that the publication complained of is true, in fact. Amongst other defenses it is averred that certain statements made by the defendant at other times were privileged, as they were made while the defendant was a witness upon the stand, duly sworn to testify the truth, etc., in an action then pending before a certain justice of the peace, in which J. Corey was plaintiff and A. Hazy was defendant. The new matters set up in the answers are denied in the replication, and upon these issues the case was tried to the court and jury. At the conclusion of plaintiff's evidence, upon motion of the defendant, a judgment of nonsuit was entered. From this judgment the plaintiff brings the case here by error.

Mr. T. J. JACKSON and Mr. JOHN HIPP, for plaintiff in error.

Messrs. MILLER & REESE, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The judgment in this case does not sound in damages, and the controversy does not relate to a franchise or freehold; hence, the jurisdiction of this court is invoked solely upon the ground that the construction of a provision of the state constitution is necessary to the determination of the case.

The claim of the plaintiff in this respect is, that in all suits and prosecutions for libel the cause must be submitted to the jury, the court being prohibited, as it is said, by section 10 of article II. of the state constitution, from entering a judgment of nonsuit in this class of actions. The section reads as follows:

"SEC. 10. That no law shall be passed impairing the freedom of speech; that every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and that in all suits and prosecutions for libel, the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the facts."

The history of this constitutional provision shows beyond question that the power conferred upon the jury to determine the law in cases of libel is given for the protection of the defendant, and not to aid a plaintiff. It is the result of the argument made by Lord Erskine, more than two hundred years ago, in defense of the Dean of St. Asaph, charged with seditious libel, and is founded upon the necessity of maintaining the liberty of the press. The speech, which is a model of forensic eloquence, is reported in full, with the proceedings of the case, in 21 How., State Trials, 847, the case occupying two hundred pages. This effort of Erskine in behalf of freedom of the press resulted in the adoption by parliament

of the libel bill of 1792, known as the "Fox Libel Act,"
which is given in full at page 665 in the first American edi-
tion of Mr. Odgers' work on Libel and Slander, prepared by
Mr. Bigelow. The preamble of this act shows it to have
been passed in order to settle doubts which had arisen on the
trial of indictments or informations for making or publishing
criminal libels. It provides that at any such trial the jury
sworn to try the issue may give a general verdict of guilty or
not guilty upon the whole matter put in issue, and shall not
be required to find the defendant or defendants guilty merely
on the proofs of the publication by such defendant or defend-
ants of the paper charged to be a libel and of the sense
ascribed to the same in such indictment or information. By
section 3 of the act it is specially provided that nothing con-
tained in the act shall extend or be construed to extend to
prevent the jury from finding a special verdict in their dis-
cretion, as in other criminal cases. Under this act, as con-
strued by the English courts, a broad distinction is taken in
prosecutions for criminal libel, and all other cases as to the
province of the court and jury, the general rule being that it
is the exclusive province of the court to determine the law,
and the exclusive province of the jury to find the facts, while
in prosecutions for libel the jury are to determine both the
law and facts under the directions of the court. In *Bank v.
Henty*, 7 Law Rep. 758, which was a case before the house
of lords, in 1882, Lord Selborne, in speaking of the law of
libel in England, said, in commenting upon certain earlier
decisions : " I do not conceive that the principle involved in
these decisions went any further than this, that the court
required it to be shown to them on the record (so that a court
of error could deal with it if need be) what the publication
was, and without doing violence to the principles and limits
of the law of libel, pronounce the publication to be libellous.
In other words, the court required to be satisfied that the
matter of the publication might, without doing violence to
its language, have such a meaning attached to it, or such a
construction put upon it, as to render it libellous ; and, sub-

ject to this limitation, it devolved upon the jury to say whether it was libellous or not." Or, as stated in the same case more concisely, by Lord Blackburn, upon page 776 : " Since Fox's act at least, however the law may have been before, the prosecutor or plaintiff must also satisfy a jury that the words are such, and so published, as to convey the libellous imputation. If the defendant can get either the court or the jury to be in his favor, he succeeds. The prosecutor, or plaintiff, cannot succeed unless he gets both the court and the jury to decide for him."

We think sufficient has been said to show that the proper construction of the Fox act in no way interfered with the province of the court in directing a judgment of nonsuit, the material change being that in actions for criminal libel, although the court might advise the jury as to the law, the jury was ultimately to determine both the law and the fact. Viewing our constitutional provision in the light of history, and of judicial precedent, it seems clear that the right conferred which was originally intended solely for the benefit of defendants in criminal prosecutions for libel has been extended by our constitution to all suits and prosecutions for libel of whatsoever nature or character. We, therefore, conclude that a judgment of nonsuit in civil actions for libel may be directed by the court in like manner as in other civil cases. Civil Code, sec. 166 ; Newell on Defamation, Slander and Libel, chap. 25 ; 13 Am. & Eng. Ency. of Law, title " Libel and Slander," 497–8 ; Odgers on Libel and Slander (Bigelow), p. 542.

It being established that courts have the power to enter judgment of nonsuit in a proper case, we are, nevertheless, of the opinion that in the present instance the ruling of the court was clearly error, for which the judgment must be reversed. The language charged as having been used and published by the defendant is clearly slanderous and libellous. The plaintiff introduced evidence tending to establish every allegation of the complaint. The new matters set up by way of defense were denied by replication, and could

properly be considered only upon proof of the facts. In these circumstances the case should have been submitted to the jury.

In so far as the publication in the Durango Weekly Tribune is concerned, it is urged in support of the ruling of the district court that the publication offered in evidence included not only the language used by the defendant, but coupled therewith other statements originating in the brain of the reporter, and for which the defendant was in no way responsible, and that for this reason the article itself was properly rejected when offered in evidence. We think the objection to the introduction of this article was well taken. If the plaintiff desired to avail himself of his rights in respect to this publication, he should have offered separately such portions of the article as were shown by the evidence to have been authorized by the defendant. This he did not do.

Notwithstanding the fact that the article itself, in its entirety, was excluded, the material statements alleged to have been made therein by the defendant were detailed without objection by the witness Hartman, while upon the stand. This witness testified that he was, at the time of the publication, the owner and publisher of the Durango Weekly Tribune; that the article in question appeared in the issue of that paper of June 15, 1891, and that the paper was upon that date regularly published and circulated in the city of Durango and elsewhere. The witness was allowed to read portions of the article in evidence. He testified that the statements so read were made to him by Mr. Woitke, and that he reduced the same to writing at the time, and that they appeared in the article as quotations, and were in his (Woitke's) language. He testified that the interview was expressly for the purpose of publication, and that it was so understood between witness and the defendant, the latter stating that he had no objection to such publication. The learned judge who tried the case below seems to have been of the opinion that to establish the publication against the defendant it was necessary to show that the manuscript had

been submitted to, or in some way adopted or approved by, the defendant; but we think the evidence in this case was sufficient to go to the jury upon this issue. The rule which attains in such case is stated as follows, in Odgers on Libel and Slander, page 155 :

" Every one who requests, procures or commands another to publish a libel is answerable as though he published it himself. And such a request need not be express, but may be inferred from the defendant's conduct in sending his manuscript to the editor of a magazine, or in making a statement to the reporter of a newspaper, with the knowledge that they will be sure to publish it, and without any effort to restrain their so doing. And it is not necessary that the defendant's communication be inserted *verbatim*, so long as the sense and substance of it appear in print."

We think the foregoing rule is a wholesome and salutary one, for, while the proprietor of a newspaper is liable for printing libellous articles, the author of the statement who causes it to be published is, also, liable, and it is usually more satisfactory to make him defendant in the action. Newell on Defamation, Slander and Libel, pp. 243–4.

According to the defendant's statement, as set forth in the complaint, and testified to at the trial, the proposition was made directly to him by plaintiff. The plaintiff, in his pleading, denies that he ever made such an offer, and upon the witness stand swears positively that he did not make any such offer to defendant, or any offer similar thereto, and that the entire statement by the defendant was false. The evidence sufficiently shows that these statements injured the credit and standing of the plaintiff in his trade and business of watchmaking and repairing in the city of Durango, and that his credit and reputation were, also, injured thereby; the nature and extent of which said injuries and the damages resulting therefrom should have been submitted to the jury, under proper instructions. *Republican Publishing Co. v. Mosman*, 15 Colo. 399. The judgment of the district court is, accordingly, reversed, and the cause remanded.

*Reversed.*