## *In re* SIMMONS.

1. STATUTES—REPEALS BY IMPLICATION NOT FAVORED.
   Repeals by implication are not favored, and only when two acts
   are so incompatible that both cannot stand does the later
   repeal the earlier.

2. SAME—ONLY STATUTES ENUMERATED IN EXPRESS REPEALING
   CLAUSE REPEALED.
   Where there is express repealing clause in revision, only enu-
   merated acts are repealed, unless other legislative intent clearly
   appears.

3. CONTEMPT—RECORDER'S COURT ACT NOT REPEALED BY JUDICATURE
   ACT.
   There being no incompatibility between recorder's court act
   (Act No. 326, Local Acts 1883) and judicature act (Act
   No. 314, Pub. Acts 1915), grant of power in former act to
   punish for contempt is not repealed by implication; and for-
   mer act not being included in statutes repealed by latter,
   it is not expressly repealed.

4. SAME—STATEMENT CONTRADICTING WITNESS IN PENDING CASE
   CONTEMPTUOUS.
   Statement made by defendant to newspaper reporter contradict-
   ing testimony of witness in pending criminal prosecution, and
   in effect charging witness with perjury, was contempt of
   court.

5. CERTIORARI—CONTEMPT—COURT'S FINDING CONCLUSIVE WHERE
   SUPPORTED BY EVIDENCE.
   On certiorari to review defendant's conviction of contempt,
   court's finding, where sustained by evidence, is conclusive,
   although evidence was conflicting, since facts were for court
   to pass upon.

6. CONTEMPT—ONE CONSENTING TO PUBLICATION OF CONTEMPTUOUS
   STATEMENT IS IN CONTEMPT.
   Where finding of court that defendant consented to publishing
   his contemptuous statement in newspaper was justified by

evidence, he was properly convicted of contempt, although reporter solicited statement and defendant did not request that it be published.

7. SAME—PARTIES, CIRCUMSTANCES, ETC., TO BE CONSIDERED.

In considering purpose, intent, and understanding of person who makes contemptuous statement to newspaper reporter, parties and circumstances should be taken into consideration, and attorney at law making such statement may be held to greater degree of circumspection than layman.

8. SAME—EVIDENCE—INTENT—WRITTEN DOCUMENT SHOWING DEFENDANT'S INTEREST IN CASE COMPETENT.

As showing defendant's interest in pending case, and as bearing upon intentional character of his consent to publication of contemptuous statement to press and responsibility therefor, fact that defendant presented, during trial of case, to trial judge at chambers, written document severely criticizing conduct of case, was competent in contempt proceedings; truth or falsity of charges in document being immaterial.

Certiorari to the Recorder's Court for the City of Detroit; Bowles (Charles), J. Submitted June 19, 1929. (Docket No. 90, Calendar No. 34,097.) Decided October 7, 1929.

John F. Simmons was convicted of contempt of court. Defendant brings certiorari. Affirmed.

*Harold Goodman,* for appellant.

*Carl M. Weideman, amicus curiæ.*

FEAD, J. This is certiorari to review a contempt proceeding. The facts are substantially undisputed.

On July 2, 1928, the criminal trial of Charles Jacoby and others, charged with extortion, was in progress in the recorder's court of the city of Detroit. The case was notorious, involved what was known as the "Purple Gang," and was voluminously reported in the local newspapers. Jacoby testified

that he had collected money from persons in the cleaning and dyeing business, under direction of Frank X. Martel, president of the Detroit Federation of Labor, and had paid the money to him. That evening a reporter for the Detroit Free Press called defendant Simmons by telephone. Simmons was secretary of the Detroit Federation of Labor and an attorney at law. His version of the conversation was:

"And then asked me, 'Do you see where Jacoby says he gave the money to Martel?' and I said, 'Yes,' and he said, 'What do you think of it?' I said, 'I don't think—I know.' I said, 'Neither Frank Martel or any officer of the Federation of Labor received any money from Charles Jacoby.' * * * He asked me, I believe, 'Do you care if we publish this story?' and I said, 'I don't care whether you publish it or not, it is the truth.' "

The reporter testified that when he asked Simmons if he cared if the statement was published, the latter replied, "No, go ahead." The next day the Detroit Free Press contained an article, part of which was:

"SIMMONS DENIES GRAFT

"John F. Simmons, Martel's attorney, denies Jacoby's charges that either Martel or any of the officials of the Detroit Federation of Labor had been paid 'graft' money by Jacoby.

" 'No member of the Detroit Federation of Labor and no representative of any of its affiliated bodies ever received one cent of the money Charles Jacoby says he gave to Frank X. Martel, the federation's president,' Simmons, attorney for the federation, said yesterday in answer to Jacoby's statement that he, as representative of the wholesale cleaners' and dyers' union, had paid Martel $3,000. * * *

"'JACOBY DISPOSED OF MONEY

" 'Jacoby disposed of this money in other ways. It never reached the office of the Federation of Labor, and the officials of the federation had nothing to do with any of the money handled by officials of the cleaners' union,' Simmons said late yesterday.''

The case was still pending and the testimony not yet closed. Contempt proceedings were had against Simmons. He was found guilty and fined $150, with the alternative of 15 days in the county jail.

Defendant challenges the jurisdiction of the court, in that the acts charged as contempt, "not being within the immediate view and presence of the court and directly tending to interrupt its proceedings, or to impair the respect due to its authority," are not within the statute, 3 Comp. Laws 1915, § 12268, defining contempts punishable by courts of record.

This statute is part of the judicature act (No. 314) of 1915. With only slight changes of language, it is substantially a merger and re-enactment of two former statutes of long standing (2 Comp. Laws 1857, §§ 4053, 4074), the criminal contempt parts of which were not designed to limit or prohibit jurisdiction but were in affirmation of the common-law inherent power of courts of record. *Langdon* v. *Wayne Circuit Judges,* 76 Mich. 358. The recorder's court of the city of Detroit was re-established by Act No. 326, Local Acts 1883 (3 Comp. Laws 1915, § 14633 *et seq.*). It has original and exclusive jurisdiction over certain criminal offenses committed within the corporate limits of the city, and supplants the circuit court of the county in that respect and territory. To exercise such jurisdiction, it was given the general powers of the circuit court. This included the jurisdiction in contempt possessed by the circuit court,

inherent as well as statutory. *Nichols* v. *Judge of Superior Court of Grand Rapids,* 130 Mich. 187.

Defendant, however, contends that the judicature act, being subsequent to the recorder's court act, impliedly repeals the general grant of power in the latter as far as it applies to contempt. His position is untenable on several counts. Repeals by implication are not favored. "Only when two acts are so incompatible that both cannot stand does the latter repeal the former." *Highland Park* v. *McAlpine,* 117 Mich. 666. There is no such incompatibility between the acts under consideration. The recorder's court act was intermediate the original and present contempt statutes. As the latter was merely a re-enactment of the former, the recorder's court act maintains its position of qualifying the latter as it did the former. 36 Cyc. p. 1084. The judicature act was a revision of the practice. Where there is an express repealing clause in a revision, only enumerated acts are repealed unless other legislative intent clearly appears. 36 Cyc. pp. 1081, 1082. The judicature act attempted no wholesale repeal or abrogation by general language, but carefully and specifically set up the particular statutes repealed by it. Neither the recorder's court act nor any part of it is listed in the repealing clause of the judicature act. The power of the recorder's court to punish for contempt in the exercise of its criminal jurisdiction is as necessary as that of the circuit court. The indices are that the legislature intended to leave that power intact. The court had jurisdiction.

The publication of defendant's statement tended to introduce into a pending trial the testimony of an unsworn witness given out of court. In effect, it charged Jacoby with perjury. It was contempt of court. *Patterson* v. *Colorado,* 205 U. S. 454 (27 Sup.

Ct. 556, 10 Ann. Cas. 689); *Felkin* v. *Herbert*, 9 L. T. R. 635; *Littler* v. *Thomson*, 2 Beav. 129; 13 C. J. p. 34. Defendant's various contentions on this branch of the case may be answered by a quotation from *Patterson* v. *Colorado, supra:*

"In the next place, the rule applied to criminal libels applies yet more clearly to contempts. A publication likely to reach the eyes of a jury, declaring a witness in a pending cause a perjurer, would be none the less a contempt that it was true. It would tend to obstruct the administration of justice, because even a correct conclusion is not to be reached or helped in that way, if our system of trials is to be maintained. The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."

The serious question is whether defendant was responsible for the publication of his statement. No authority involving contempt of court has been cited on this issue, and both counsel have discussed the analogous law of libel, under which defendant contends the publication was an independent act of the reporter and editor for which he cannot be held accountable.

In *Johnson* v. *Gerasimos*, 247 Mich. 248, this court recently recognized and applied the general rule that merely answering questions of a newspaper reporter, even though he is known to be a reporter, is not sufficient to charge a person with responsibility for the publication of the answers. 37 C. J. p. 15.

However, in this case the reporter asked defendant if he could quote his statement, and the testimony upon defendant's reply justified the finding of the court that he had consented to the publication. While the defendant and the reporter disagreed as

to precise words used, the facts were for the court to pass upon, and, on certiorari, his finding is conclusive, as there was evidence to sustain it. *People* v. *Doe,* 226 Mich. 5.

To be responsible for a publication a party need not have requested it or even have given his express consent. The rule is stated:

"If the statement is indicated for publication, with the intention that it will be written and published, and the purpose in that respect is carried out, the party who makes it with such intent and understanding is equally guilty as if an express request for publication had been made." 17 R. C. L. p. 386.

The rule is illustrated in *Weston Electrical Instrument Co.* v. *Benecke,* 82 N. J. Law, 445 (82 Atl. 878, Ann. Cas. 1913 D, 11); *Weston* v. *Weston,* 83 App. Div. (N. Y.) 520 (82 N. Y. Supp. 351); *Hazy* v. *Woitke,* 23 Colo. 556 (48 Pac. 1048); and *Valentine* v. *Gonzalez,* 179 N. Y. Supp. 711, involving civil libel. In the latter case the court held (quoting from syllabus):

"Where defendant furnished the information upon which a libel was based, and documents in support thereof, to a newspaper reporter, knowing that the latter intended to publish the story, he caused the defamatory matter to be published, though the reporter solicited the information, and defendant did not request that it be published."

In *Hazy* v. *Woitke, supra,* in which it appeared the defendant, after making a statement, said he had no objection to its publication, the court approved the rule as stated in Odgers on Libel and Slander (1st Am. Ed.), 155:

"Every one who requests, procures, or commands another to publish a libel is answerable as though he published it himself. And such a request need not be

express, but may be inferred from the defendant's conduct in sending his manuscript to the editor of a magazine, or making a statement to the reporter of a newspaper, with the knowledge that they will be sure to publish it, and without any effort to restrain their so doing.''

In the two cases involving criminal libel, which we have found, *Clay* v. *People*, 86 Ill. 147, and *State* v. *Osborn*, 54 Kan. 473 (38 Pac. 572), the same rule of responsibility for publication was approved. In the latter case the court said:

''Of course, a person who casually makes a false statement to another, with no purpose or intention that it shall be written, printed, or published, even though the other person be a reporter for a newspaper, and the statement should afterward be printed and published, will not be guilty of libel. On the other hand, if a person knowingly dictates a slander to a reporter for publication, and knowing that it would be published, and it is afterward published as given by him, he is responsible for a libel, and may be punished equally with the one who aided or united with him in making the same.''

The rule so announced is sensible. In considering the purpose, intent, and understanding of a person who makes statements to a newspaper reporter, the parties and circumstances should be taken into consideration. An attorney at law fairly may be held to a greater degree of circumspection than a layman. One in a public position, having frequent contact with newspapers and reporters, may be held to a greater knowledge of their habits of obtaining and publishing interviews than one in a secluded station in life. It would be a work of supererogation to suggest reasons for holding that defendant knew the reporter intended to publish his statement, at once and while

it was news, and that defendant's reply to the request
for permission to quote him was a consent and au-
thorization of publication.

The court was justified in holding defendant re-
sponsible for the publication of his statement.

The extended argument of counsel that defend-
ant was merely exercising his constitutional right of
free speech in defending his own character and that
of the association against slander is beside the mark.
The accusation had been made against Martel. The
record did not disclose that defendant had been
attacked. His statement was a sweeping assertion,
beyond the possibility of his personal knowledge,
designed not only in defense of Martel but in im-
peachment of Jacoby. Would defendant have been
justified in making the statement privately to the
jurors? Obviously not. Then he was not justified
in causing its publication where it might come to
their attention. Nor was he justified by the fear
that, if he had refused to deny the charge against
Martel, the newspaper might have published his re-
fusal to make denial. The offense charged against
him was not merely in making the statement, but also
in consenting and being a party to its publication.

During the Jacoby trial, defendant presented to
the trial judge at chambers a written document,
severely criticizing the conduct of the case. It was
received in evidence in the contempt proceedings
and cited by the court as one of several facts in
support of his conclusion that defendant's statement
to the newspaper was not innocently made on the
spur of the moment, but was deliberately intended
to embarrass the court and jury and bring the trial
into public disrepute, in furtherance of a general
scheme to that end. The fact of its presentation
was competent as showing defendant's interest in

the Jacoby case and as bearing upon the intentional character of his consent to the publication of his statement to the press and his responsibility therefor. The truth or falsity of the charges in the document was immaterial to that issue. The record does not show that defendant was convicted of contempt for making or presenting the document at chambers. The incident was used by the court as bearing upon his animus in connection with the charge of which he was convicted. It was not error to so use the testimony.

We find no error in the record, the conviction is affirmed, and the cause remanded for execution of the judgment.

NORTH, C. J., and WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. The late Justice FELLOWS took no part in this decision.