*In re* GILLILAND.

1. CERTIORARI—SCOPE OF REVIEW.

On certiorari the Supreme Court reviews questions of law and determines only whether there was evidence of any facts which justify findings of the trial judge.

2. CONTEMPT—CIRCUIT COURT IN CHANCERY—JURISDICTION.

Circuit court in chancery had jurisdiction to try person for contempt who had been employed as an investigator by a committee representing certain members of an allegedly insolvent mutual fire insurance association upon formal charge of making contemptuous and derogatory remarks regarding the action of the court, not made in its presence, although such court has no criminal jurisdiction (3 Comp. Laws 1929, § 13910).

3. APPEAL AND ERROR—VARIANCE—CONTEMPTS—PREJUDICE.

Variance between affidavit in contempt proceedings and testimony in support thereof *held*, not to constitute reversible error in the absence of a showing of prejudice.

4. CONSTITUTIONAL LAW—FREE SPEECH—FREE PRESS—CRITICISM OF COURTS.

Criticism of the courts within limits should not be discouraged, it being a proper exercise of the rights of free speech and press.

5. CONTEMPT—CRITICISM OF COURT.

Remarks of a vilifying or contumacious nature, rendered by a suitor, his attorney or agent, in criticism of a court subject the maker thereof to the accompanying penalties especially when the offending statements may impede or disturb the proper functioning of the court; the fact that judges are apt to overlook transgressions by disappointed persons being no excuse or justification for contemptuous utterances (3 Comp. Laws 1929, § 13910).

6. CERTIORARI—WEIGHT OF EVIDENCE—CREDIBILITY OF WITNESSES.

On certiorari the Supreme Court does not pass on the weight of the evidence or the credibility of the witnesses.

7. CONTEMPT—EVIDENCE—FINDING OF COURT.

Remarks by investigator for committee of members of an allegedly insolvent mutual fire insurance association that judge of court in which hearing on a receivership matter was being conducted was shoving in other cases and putting insurance

case to one side and that "they were all crooked," along with other statements *held*, sufficient evidence to support finding of the trial judge that such investigator was guilty of contempt of court (3 Comp. Laws 1929, § 13910).

8. SAME—ILLEGAL PRACTICE OF LAW—EVIDENCE.

Finding of contempt for illegally practicing law before the court, made without formal charges having been presented *held*, improper where it was shown that contemner sat at counsel's table as a paid investigator of facts he had assembled for the benefit of counsel and, after being ordered to leave such table, sent notes to the counsel but not that he made any public utterances to the court nor that he in any way represented himself to be an attorney (3 Comp. Laws 1929, § 13910).

9. SAME—ILLEGAL PRACTICE OF LAW—MATTERS WITHOUT THE PRESENCE OF THE COURT—EVIDENCE.

On review of finding of contempt of court because contemner was illegally practicing law before the court, proof of facts which took place outside of the court and prior to the hearing may not be considered by the court where formal charges were not preferred, since the contemner is entitled first to have proper charges preferred against him so that he may answer them and prepare his defense as to matters without the presence of the court (3 Comp. Laws 1929, § 13910).

10. ATTORNEY AND CLIENT—ILLEGAL PRACTICE OF LAW—CONTEMPT.

A circuit judge has the right summarily to punish a person for illegally practicing law in his presence (3 Comp. Laws 1929, § 13910).

11. CONTEMPT—CONCURRENT SENTENCES—AFFIRMANCE OF FINDING—REVERSAL AS TO SECOND CHARGE.

Upon reversal of finding of contempt of court on one charge and affirmance of finding on another charge, contemner is merely relieved of stigma of the one charge where jail sentence was to run concurrently.

12. SAME—COSTS—CONCURRENT SENTENCE.

No costs are allowed where finding of guilt on one charge of contempt is affirmed and finding on another charge is reversed where jail sentence on each charge had been ordered to run concurrently.

Appeal from Ingham; Carr (Leland W.), J. Submitted April 19, 1938. (Docket No. 73, Calendar

No. 39,789.) Decided June 6, 1938. Rehearing denied October 3, 1938. Reconsideration denied November 10, 1938. Certiorari to the Supreme Court of the United States denied February 27, 1939.

Clayton C. Gilliland was found guilty of contemptuous conduct and of practicing law without a license. On *habeas corpus* and certiorari by contemner. Writs dismissed.

*Albert McClatchey*, for petitioner.

*Raymond W. Starr*, Attorney General, and *Edmund E. Shepherd* and *George H. Heideman*, Assistants Attorney General, *amici curiæ*.

BUTZEL, J. Respondent, who is petitioner for writ of certiorari, was found guilty of two charges of contempt of court and sentenced to serve 30 days in jail for each offense, the sentences, however, to run concurrently. Respondent was employed as an investigator by a committee representing a large number of the members of the Lapeer Farmers Mutual Fire Insurance Association, an alleged insolvent association and in the hands of a receiver. A hearing of its affairs was in progress before the Honorable Leland W. Carr of the Ingham circuit court. The respondent was attending the hearing for the purpose of assisting the members whose committee had employed him and giving their attorney such information as would be helpful. He sat at the counsel table with the attorney representing his employers and made suggestions to him. When reprimanded by the judge, he took a seat farther back in the court room and from there sent written memoranda to the attorney.

Respondent was brought into court on a single charge of uttering contemptuous and derogatory remarks regarding the action of the court. The order to show cause was accompanied by the affidavit of

Chauncy Wyman, a deputy sheriff, who deposed therein that, while on a public thoroughfare in the city of Lansing, respondent met him and said:

"This case is all one-sided. Judge Carr is upholding these officers of the insurance company and also upholding them when he knows they are wrong, he is not giving us a ghost of a show at all. He is trying to put us in the mire."

According to the affidavit, respondent further stated to Wyman on the following day:

"The judge is all for the other side, and he is going to give us nothing. The judge is delaying this case as much as possible by shoving other cases in between."

Defendant denied making these remarks. As a witness at the hearing, Wyman somewhat modified the force of the words in the affidavit and referring to respondent testified:

"*A.* Well, he asked—the first thing he said was, what I thought of the case.

"*Q.* What case was that?

"*A.* The Mutual Fire Insurance case, Lapeer Farmers' Mutual Fire Insurance case, and I told him I had not paid much attention to it. He made the remark that it was about as crooked a case as he ever heard. And I said, 'In what way?' 'Well,' he said,— 'they were all one-sided,' he said, 'the judge stuck up for the other side of it all the way through,' and he said, 'he has not given us any show at all.' And I made the remark that I did not think the judge was that kind of a man, and furthermore I said that he better be kind of careful what he was talking about.

"*Q.* You say the judge—do you know what judge he was referring to?

"*A.* Yes, sir.

"*Q.* What judge was that?

"*A.* Judge Carr.

"*Q.* Did you have a further conversation with the man the next day?

"*A.* On the 29th, yes.

"*Q.* What was that conversation?

"*A.* The conversation took place at the drinking fountain by the elevator.

"*Q.* Right here in the courthouse?

"*A.* Yes. And he came up to me at first and he asked me if I knew where Mr. Leibrand was, and the rest of the people. And I said to him, I said, 'Your case was not to be taken up until one o'clock this afternoon, as I understand.' 'Well,' he said, 'we did not hear anything about it at all.' He said, 'We are all here and waiting to proceed with the case.' 'Well,' I said, 'The judge has had other cases this morning,' and he said, 'Well, that is the way of it.' He said, 'The judge has always shoved in other cases and puts us to one side.' He said, 'We are not having any show at all.' And I said, 'Well, the jury trials are on,' or something like that, and he said, 'Well, it is a crooked deal all the way through.' He said, 'They are all crooked,' and he says—

"*Q.* To whom did he refer, do you know, when he said that?

"*A.* I supposed he referred to the court.

"*Q.* Not what you supposed, do you know?

"*A.* Well, yes, I know.

"*Q.* To whom did he refer?

"*A.* He referred from the judge down.

"*Q.* Whom do you mean by down?

"*A.* The judge and the rest of the attorneys, the State attorneys and so on down.

"*Q.* Was there any conversation as to whether the judge was delaying the case or not?

"*A.* Yes, he said that the judge was delaying the case by shoving in the other cases.

"*Q.* In this conversation on the 28th, was there any conversation about somebody being shoved in the mire?

"*A.* He said that they were trying to shove—he said, 'They are trying to shove us in the mire.'

"*Q.* To whom did he refer, who was being shoved?

"*A.*   Well, I took it from his conversation that he meant their side, the side that he was representing."

An elevator operator testified that he overheard respondent make the remarks to the officer:

"Mr. Gilliland, he made the remark that sounded to me like this, 'Well, a fellow don't get justice any more, from the judge down.'"

The judge found respondent guilty of making contemptuous remarks.

The case comes to us on certiorari and we review questions of law and determine only whether there was evidence of any facts which justify the findings of the trial judge.

It is claimed that the proceedings were null and void because the basic affidavit, the order to show cause and the answer thereto and the transcript of testimony were entitled "In Chancery." They are entitled:

"State of Michigan, In the Circuit Court for the County of Ingham, In Chancery.

"Contempt Proceedings against C. C. Gilliland, whose first name is not known but his person is well known."

Respondent raised no formal objections below to the jurisdiction of the court. He filed a complete answer to the allegation made in the affidavits. He made no motion to quash because the order had issued out of the chancery side of the court. Counsel contends that a punitive sentence, appropriate only in proceedings had at law for criminal contempts, may not be imposed in a chancery proceeding. Counsel relies upon the case of *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418 (31 Sup. Ct. 492, 34 L. R. A. [N. S.] 874), where the Supreme Court held that a sentence for criminal contempt could not

be imposed in a civil proceeding. The entitling, as quoted in the instant case, shows that the contempt proceeding was not a part of the original civil cause involving the alleged insolvent company, but was an independent proceeding. The court in the *Gompers Case, supra,* stated that the entitling of the proceedings would have been proper if it had been "In re Gompers." Section 13910, 3 Comp. Laws 1929 (Stat. Ann. § 27.511), provides that all courts of record have power to punish for contempt. In *People, ex rel. Attorney General,* v. *Yarowsky,* 236 Mich. 169, we quoted with approval from *Middlebrook* v. *State,* 43 Conn. 257 (21 Am. Rep. 650), to the effect that courts in chancery and probate courts, although they, have no criminal jurisdiction, yet have power to punish for contempt. The court had jurisdiction to try respondent for contempt and he points to no instance where the court departed from the form of procedure proper to the trial of the first charge.

It is claimed that there is a fatal variance between the words set forth in the affidavit and the testimony of the deputy. While the testimony somewhat modified the accusations in the affidavit, there is not such a fatal variance as would constitute reversible error in the absence of a showing of prejudice. See *Bolibrzuch* v. *Gaffke,* 251 Mich. 92. Respondent was fully apprized of the charge made against him on this count.

The remaining question in regard to the first charge of contempt is whether there is any evidence to support the finding of the trial judge. It is true that courts should not be overly sensitive. Criticism of the courts within limits should not be discouraged and it is a proper exercise of the rights of free speech and press. Such criticism should not subject the critic to contempt proceedings unless it tends

to impede or disturb the administration of justice. The courts should realize that disappointed suitors, their attorneys, and agents, may be prone to criticize the court and possibly indulge in outbursts of disappointment or temper and make unguarded and improper remarks. Nevertheless, such remarks, if of a vilifying or contumacious nature, subject the makers thereof to the accompanying penalties. It is the right and duty of a conscientious court to protect its good name, when the offending statements may impede or disturb the proper functioning of the court, and the fact that judges are apt to overlook transgressions of this character does not excuse or justify contemptuous utterances. See *Campbell* v. *Judge of Recorder's Court,* 244 Mich. 165; *In re Chadwick,* 109 Mich. 588, where we quoted from *Yates* v. *Lansing,* 5 Johns. Cas. (N. Y.) 282:

"Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence and destroy their authority. Instead of being venerable before the public, they become contemptible, and we thereby embolden the licentious to trample upon everything sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty."

A fair reading of respondent's remarks, as testified to, shows that respondent stated on one day that the case was "about as crooked a case as he had ever heard;" that "they were all one-sided;" that "the judge stuck up for the other side of it all the way through;" that he had not given the respondent "any show at all." These statements might possibly be capable of an innocent construction were they not followed up the next day with further remarks. When respondent said:

"We are all here and waiting to proceed with the case," it was explained to him that the judge had other cases that morning and he replied:

"Well, that is the way of it. The judge has always shoved in other cases and puts us to one side. We are not having any show at all."

When he was informed that the jury trials were on, he said:

"Well, it is a crooked deal all the way through. They are all crooked."

The only reasonable inference that can be drawn from the remarks and the entire context is that respondent stated that the judge was one of those who were "crooked all the way through." On certiorari we do not pass on the weight of the evidence or the credibility of witnesses. There being some evidence to support the finding of the trial judge, we cannot disturb it on certiorari. *In re Simmons,* 248 Mich. 297. The judgment of the court in regard to this contempt is affirmed.

The court, in the same proceeding and without any formal charges being made as to a second offense, found respondent in contempt on account of illegally practicing law before the court. The mere fact that respondent sat at the counsel's table as a paid investigator of facts he had assembled for the benefit of counsel and that, after being ordered to leave the table, he sent notes to counsel, does not of itself constitute the illegal practice of law. Experts, men engaged in other professions, litigants and their agents frequently sit at the counsels' table in order to assist them. Although it was also shown that respondent brought law books from his own library to court and gave them to counsel, there is no claim

that he made any public utterances to the court nor in any way represented himself to be an attorney. To supplement the personal knowledge of the court, however, it was shown how respondent operated, how he was employed and what he had done previous to coming to the court. We need not discuss these incidental facts, which did not occur in the presence of the court and which must have been relied upon by the court in finding respondent guilty of the illegal practice of the law. The judge unquestionably has the right summarily to punish one for illegal practice of the law in his presence. However, when the proof on the charge of contempt for illegal practice partly depends upon practices which took place outside of the court and prior to the hearing, the contemner is entitled first to have proper charges preferred against him so that he may answer them and prepare his defense. This was not done and, therefore, the conviction as to this contempt is set aside. Inasmuch as the sentence of punishment on conviction under the latter charge runs contemporaneously with that under the first, the practical results are the same, except that respondent is relieved of the stigma of the conviction on the second charge. The punishment remains the same.

The writs of certiorari and *habeas corpus* are dismissed, without costs.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.