### *In re* CONTEMPT OF DUDZINSKI
### (GRABLE v BROWN)

Docket No. 234148. Submitted January 15, 2003, at Detroit. Decided June
17, 2003, at 9:00 A.M. Leave to appeal sought.

Henry J. Dudzinski was held in contempt of court by the Wayne Cir-
cuit Court, Isidore B. Torres, J., after he wore a shirt bearing the
words, "Kourts Kops Krooks," to a pretrial hearing in a suit involv-
ing a Detroit police officer who fatally shot and killed an individ-
ual. Dudzinski was one of three spectators wearing the shirts and
sitting quietly in the courtroom. He refused to remove the shirt or
leave the courtroom as instructed by the circuit court, contending
that the order violated his First Amendment right of free speech.
The trial court concluded that the shirt was offensive, deprived the
parties of a fair trial, and sentenced Dudzinski to twenty-nine days
in jail. Dudzinski fully served his sentence, but appealed as of right
the order holding him in contempt.

The Court of Appeals *held*:

1. Under the circumstances of this case, the appellant's behavior
did not present a serious and imminent threat to the fair adminis-
tration of justice and no compelling state interest was served by
requiring the appellant to remove his shirt or leave the courtroom.
The appellant was one of only three spectators wearing the shirts
while sitting quietly in the courtroom, and there was no threat that
such behavior would deprive the parties of a fair trial because the
incident occurred during a pretrial hearing outside the presence of
the jury. The trial court erred and infringed on the appellant's First
Amendment rights by ordering him to remove his shirt or leave the
courtroom.

2. Contempt of court is defined as a willful act, omission, or
statement that tends to impede the functioning of a court. Although
the appellant's act in wearing the shirt was constitutionally pro-
tected free speech, because the appellant willfully failed to obey
the trial court's valid albeit erroneous order to remove his shirt or
leave the courtroom, the appellant was properly held in criminal
contempt.

3. The issue of the proportionality of the sentence was made
moot by the appellant's completion of the sentence.

Affirmed.

CONSTITUTIONAL LAW — FIRST AMENDMENT.

> A courtroom spectator's act of wearing a shirt bearing words critical of the court and one of the parties to an action was a constitutionally protected exercise of the right to free speech; the spectator's behavior did not present a serious and imminent threat to the fair administration of justice where the spectator was one of three individuals wearing such shirts, the spectator did not disturb the proceedings, and the incident took place during a pretrial hearing outside the presence of the jury (US Const, Am I; Const 1963, art 1, § 5).

*Tamara A. French* for Henry J. Dudzinski.

Before: ZAHRA, P.J., and MURRAY and HOOD, JJ.

ZAHRA, J. Appellant, Henry Joseph Dudzinski, appeals as of right from the trial court's order finding him in contempt of court and sentencing him to twenty-nine days in jail. Although we conclude the trial court erred and infringed on appellant's First Amendment right to free speech, we affirm the contempt order.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 30, 2000, appellant sat in the courtroom as a spectator during pretrial settlement discussions in *Grable v Brown*.[1] Appellant and his wife were wearing shirts[2] bearing the following statement: "Kourts Kops Krooks."[3] The trial judge told appellant and his

---

[1] In *Grable v Brown*, Wayne Circuit Court, Docket No. 99-906156-NO, the personal representative of the estate of a decedent brought a suit against a Detroit police officer who fatally shot the decedent.

[2] Appellant was also wearing a button that read something to the effect of "Stop police brutality. Wear black October 22nd."

[3] The hearing transcripts give several slightly different readings of appellant's shirt. At the May 30, 2000, hearing, the trial judge indicated that appellant's shirt read: "Kourt Kops Krooks" or "Kourts, Kops and

wife that the shirts were not permitted in his court-
room and told them to leave the courtroom immedi-
ately. The trial judge told appellant and his wife that
they could return to the courtroom after they had
taken their shirts off. Appellant left the courtroom
and returned after he had removed his shirt. The trial
judge explained to appellant that his shirt was offen-
sive, "taint[ed] the fair administration of justice," and
deprived the parties of a fair trial. The trial judge then
warned appellant that he could not wear the shirt in
his courtroom in the future.

On April 12, 2001, appellant again wore the "Kourts
Kops Krooks" shirt when he appeared as a spectator
for a motion hearing in *Estate of Grable*. Before argu-
ments began, the trial judge stated on the record that
certain spectators were wearing inappropriate shirts
and that they were disruptive of the proceedings.
Defense counsel moved for the trial court to order
appellant and the two other people wearing the shirts
to remove their shirts or leave the courtroom. The
trial judge found that the shirts affected the fair
administration of justice and granted defendant's
motion. When the trial judge ordered appellant and
the two other spectators to take off their shirts or
leave the courtroom, appellant refused, stating that he
was invoking his First Amendment rights. The other
two spectators wearing the shirts complied with the
court's order. The trial judge gave appellant one more
opportunity to comply with the order, but appellant

Krooks." At the April 12, 2001, hearing, the trial judge indicated that appel-
lant's shirt read: "Kops, Krooks and the Kourts." At the April 17, 2001,
hearing, appellant's attorney indicated that appellant's shirt read: "Kops,
Krooks, Kourts" or "Kops, Krooks and Kourts." The trial judge stated that
appellant's shirt read: "Kourts, Krooks and Kops."

again refused. The trial court found appellant in direct criminal contempt and sentenced him to twenty-nine days in jail. The trial court denied appellant's emergency motion to vacate the contempt order because it determined that appellant's conduct amounted to a protest that affected the fair administration of justice. Appellant fully served his twenty-nine day jail term.[4]

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to hold a party or individual in contempt. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). However, to the extent that our review requires us to examine questions of law, such as constitutional issues, our review is de novo. *Id.*; *Thomas v Deputy Warden, State Prison of Southern Michigan*, 249 Mich App 718, 724; 644 NW2d 59 (2002).

## III. APPELLANT'S FIRST AMENDMENT RIGHTS

Appellant argues that the trial court violated his First Amendment right to freedom of expression by

---

[4] Because appellant fully served his jail term, his appeal is arguably moot. *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994). However, this Court will consider questions that are moot, but involve issues of public significance and are likely to recur, yet evade judicial review. *People v Kaczmarek*, 464 Mich 478, 481; 628 NW2d 484 (2001). The present issue is significant because it involves courtroom spectators' First Amendment rights to express themselves. This issue is likely to recur because appellant or others may want to wear clothing bearing political messages in a courtroom in the future, yet it is likely to evade judicial review because many courtroom spectators will either merely obey the trial judge's order to leave the courtroom or will not obtain judicial review until their contempt of court sentences are served. Thus, we will address the merits of this appeal.

finding him guilty of contempt of court for wearing his "Kourts Kops Krooks" shirt in the courtroom. The First Amendment of the United States Constitution provides, "Congress shall make no law . . . abridging the freedom of speech . . . ." US Const, Am I. The analogous provision in the Michigan Constitution provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5. The rights of free speech under the Michigan and federal constitutions are coterminous. *Woodland v Michigan Citizens Lobby*, 423 Mich 188, 202; 378 NW2d 337 (1985). Therefore, federal authority construing the First Amendment may be considered in interpreting Michigan's guarantee of free speech. *Michigan Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 168-169; 533 NW2d 339 (1995).

The United States Supreme Court has explained that "the right of free speech is not absolute at all times and under all circumstances," and that certain well-defined and narrowly limited classes of speech are preventable and punishable. *Chaplinski v New Hampshire*, 315 US 568, 571-572; 62 S Ct 766; 86 L Ed 1031 (1942). Every citizen lawfully present in a public place has the right to engage in expressive activity and such activity may generally not be restricted on the basis of its content, but may be restricted if the manner of expression is basically incompatible with the normal activity of the particular place at the particular time. *Grayned v City of Rockford*, 408 US 104, 115-116; 92 S Ct 2294; 33 L Ed 2d 222 (1972). Speech or expression that is restricted because of the content

of the message it conveys is subject to the most exacting scrutiny. *United States v Playboy Entertainment Group, Inc*, 529 US 803, 813; 120 S Ct 1878; 146 L Ed 2d 865 (2000). In order to restrict speech on the basis of its content, the state must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Widmar v Vincent*, 454 US 263, 269-270; 102 S Ct 269; 70 L Ed 2d 440 (1981).

The state has a compelling interest in protecting a criminal defendant's right to a fair trial, which is guaranteed by the Sixth Amendment of the United States Constitution. Where fair trial rights are at a significant risk, the First Amendment rights of trial spectators must be curtailed. *Norris v Risley*, 918 F2d 828, 832 (CA 9, 1990). However, the content of speech in a courtroom may only be restricted if it constitutes an imminent threat to the administration of justice. *Eaton v Tulsa*, 415 US 697, 698; 94 S Ct 1228; 39 L Ed 2d 693 (1974).

> The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil. . . . [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate. [*Craig v Harney*, 331 US 367, 376; 67 S Ct 1249; 91 L Ed 1546 (1947).]

"Criticism of the courts within limits should not be discouraged and it is a proper exercise of the rights of free speech and press. Such criticism should not subject the critic to contempt proceedings unless it

tends to impede or disturb the administration of justice." *In re Gilliland*, 284 Mich 604, 610-611; 280 NW 63 (1938). The United States Supreme Court explained that reviewing courts must use a balancing test when determining whether speech constitutes an imminent threat to the administration of justice:

> Whether the threat to the impartial and orderly administration of justice must be a clear and present or a grave and immediate danger, a real and substantial threat, one which is close and direct or one which disturbs the court's sense of fairness depends upon a choice of words. Under any one of the phrases, reviewing courts are brought in cases of this type to appraise the comment on a balance between the desirability of free discussion and the necessity for fair adjudication, free from interruption of its processes. [*Pennekamp v Florida*, 328 US 331, 336; 66 S Ct 1029; 90 L Ed 1295 (1946).[5]]

If the speech posed a serious and imminent threat to a fair trial, the First Amendment rights must bow to the constitutional right to a fair trial. *Norris, supra* at 832.

Appellant argues that the trial court erred in ordering him to take off his shirt or leave the courtroom because the statement on his shirt was protected speech under the First Amendment. We agree that the trial court's order was erroneous under the circumstances of this case. The trial court relied on *In re Contempt of Warriner*, 113 Mich App 549; 317 NW2d 681 (1982), remanded 417 Mich 1100.26 (1983), to support its conclusion that appellant's behavior was not constitutionally protected because it affected the fair administration of justice. However, *Warriner* does

---

[5] *Pennekamp* involved a question of when, if ever, the press may be held in contempt subsequent to publication of certain material.

not support the trial court's conclusion that the statement on appellant's shirt was not constitutionally protected speech. In *Warriner, supra* at 550, the defendant was an observer in a courtroom during a hearing to set bond for his friend. As the defendant's friend was being led out of the courtroom after the amount of bond was determined, the defendant raised his fist in the air and began shouting in full view of the judge. *Id.* at 550-551. The trial court found the defendant to be in contempt of court and sentenced him to thirty days in a correctional facility. *Id.* at 551.[6] This Court determined that the defendant's conduct did not amount to constitutionally protected free speech because "[d]isruptive, contemptuous behavior in a courtroom is not protected by the constitution." *Id.* at 555, citing *Cox v Louisiana*, 379 US 559; 85 S Ct 476; 13 L Ed 2d 487 (1965). In the present case, although appellant was a spectator in the courtroom, there is no indication that he, unlike the defendant in *Warriner*, made any verbal outbursts or aggressive movements in the courtroom. Instead, he quietly sat in the courtroom while wearing his shirt, which bore a political message. While the defendant's behavior in *Warriner* was loud and disruptive, appellant's behavior in the present case was not. Therefore, the facts in *Warriner* are distinguishable from this case.

A case dealing with a First Amendment issue that is more analogous to the present case is *Norris, supra.* In *Norris, supra* at 829, the petitioner was charged as a criminal defendant for a sexual offense. At his arraignment, approximately fifteen spectators ap-

---

[6] Our Supreme Court reduced the defendant's punishment to five days' confinement. *In re Contempt of Warriner*, 417 Mich 1100.26 (1983).

peared in the courtroom wearing buttons bearing the words "Women Against Rape." *Id.* at 829-830. Later, at the petitioner's trial, a number of women appeared as spectators wearing the same buttons. *Id.* at 830. On appeal, the petitioner argued that the presence of the women spectators wearing the buttons deprived him of a fair trial. *Id.* In balancing the First Amendment rights of the trial spectators with the petitioner's right to a fair trial, the United States Court of Appeals for the Ninth Circuit explained that the issue was whether the buttons posed a serious and imminent threat to the petitioner's right to a fair trial. *Id.* at 832. In concluding that the buttons presented an unacceptably high risk of depriving the petitioner of a fair trial, the Ninth Circuit relied heavily on the fact that the jury was exposed to the buttons during the trial and may have been influenced by their message when deciding the petitioner's guilt. *Id.* at 831, 834.

The West Virginia Supreme Court came to a similar conclusion. In *West Virginia v Franklin*, 327 SE2d 449, 451 (W Va, 1985), the defendant was on trial for driving under the influence of alcohol, resulting in death. During his trial, between ten and thirty demonstrators for the organization of Mothers Against Drunk Drivers (MADD) appeared in the courtroom wearing buttons reading "MADD" in capital letters. *Id.* at 454. The demonstrators sat directly in front of the jury prominently displaying their MADD buttons. *Id.* The West Virginia Supreme Court reversed the defendant's conviction and granted the defendant a new trial after concluding that the spectators with their buttons constituted "a formidable, albeit passive, influence on the jury." *Id.* at 455.

The present case is similar to *Norris* and *Franklin* in that it involves a case where the trial court's problem appears to have been with the specific content of appellant's clothing, rather than the fact that the clothing displayed a political message. However, the present case, unlike *Norris* and *Franklin*, involves a pretrial hearing where no jury was present when appellant was wearing his shirt in the courtroom. Therefore, there was no threat that the jury was improperly influenced by appellant's shirt. Furthermore, where *Norris* and *Franklin* both involved a large group of spectators wearing buttons, the present case involved only three spectators.

In *In re Frankel*, 165 AD2d 382; 567 NYS2d 1018 (1991), the Appellate Division of the Supreme Court of New York reviewed a New York trial court's order requiring attorneys wearing "Ready to Strike" buttons to remove them while in a nonjury courtroom or be found in contempt. While the appellate court recognized that the trial court had the inherent power to require order in the courtroom, it also concluded that an individual's First Amendment rights could not be "limited or subordinated in his freedom of expression to anything less than the absolute requirement to prevent the obstruction of justice." *Id.* at 384. In concluding that the buttons presented no serious or imminent threat to the administration of justice, the appellate court found it significant that there was no jury present to be influenced one way or the other by the presence of the buttons or their message. *Id.* at 385-386. Once again, *In re Frankel* is similar to the present case in that it involved a written political statement in a courtroom. *In re Frankel* is also more similar to the present case than *Risley* and *Franklin* in that the

written statement at issue was not displayed during a jury trial. In both *In re Frankel* and the present case, there was no risk that the jury would be influenced by the political message on appellant's shirt.[7]

Applying the applicable constitutional law, we conclude that appellant's behavior did not present a serious and imminent threat to the fair administration of justice. The statement on appellant's shirt, "Kourts Kops Krooks," appears to compare courts and police officers to the Ku Klux Klan and imply that they are corrupt "crooks." Because the underlying case involved allegations of police brutality, the message on appellant's shirt related to the issues in the underlying case. It appears that the trial court ordered appellant to leave the courtroom because of the specific content of the shirt rather than the fact that the shirt contained a political message. Because the trial court restricted the content of appellant's expression, it needed a substantial or compelling governmental interest for doing so. Although the message on appellant's shirt appeared to criticize the integrity of the court and one of the parties in the underlying case, appellant's conduct and the message on his shirt did not unduly affect either party's right to a fair trial. Appellant was sitting in the courtroom quietly and was not disturbing the proceedings. He was not with a large group, but was with only two other people wearing the same or similar shirts. Most importantly, appellant wore the shirt as a spectator at a pretrial

---

[7] As it relates to the order of contempt in this case (discussed in Part IV), the present case differs from *In re Frankel* in that appellant violated a direct order of the court to take off his shirt or leave the courtroom. In *In re Frankel*, the petitioners did not violate the supreme court justice's order, but challenged its legitimacy in the appellate court.

hearing when the jury was not present. Accordingly, there was no danger of appellant's views being imposed on the jury. Therefore, there was no serious or imminent threat to the administration of justice and no compelling state interest was served by requiring appellant to remove his shirt or leave the courtroom.

"Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown v United States*, 356 US 148, 153; 78 S Ct 622; 2 L Ed 2d 589 (1958). In this case, the trial court failed to distinguish between the two. Although appellant's shirt may have been insulting to the trial court and to one of the parties in the underlying case, it did not affect either party's right to a fair trial. "Judges are supposed to be men of fortitude, able to thrive in a hardy climate." *Craig*, *supra* at 376. A trial court may not impinge on the First Amendment rights of a courtroom observer on the basis of a mere offense to its sensibilities or those of one of the parties. We conclude that the statement on appellant's shirt was constitutionally protected political speech that did not constitute an imminent threat to the administration of justice and that the trial court erred in ordering appellant to remove his shirt or leave the courtroom.

#### IV. THE CONTEMPT ORDER

Notwithstanding our conclusion regarding the constitutionality of the trial court's order to remove the shirt or leave the courtroom, the ultimate question before this Court is whether the trial court abused its discretion in finding that appellant was in criminal contempt for disobeying the court's order. We con-

clude that it did not. Contempt of court is defined as a " 'willful act, omission, or statement that tends to . . . impede the functioning of a court.' " *In re Contempt of Auto Club Ins Ass'n, supra* at 708, quoting *In re Contempt of Robertson,* 209 Mich App 433, 436; 531 NW2d 763 (1995). Courts in Michigan have an inherent and statutory power to punish contempt of court by fine or imprisonment. MCL 600.1701 *et seq.*; *In re Contempt of Auto Club Ins Ass'n, supra* at 708-709. "[T]he primary purpose of the contempt power is to preserve the effectiveness and sustain the power of the courts." *Id.* at 708. The trial judge in this case relied on MCL 600.1701 to explain the source of its statutory power to find appellant in contempt for the behavior he displayed in the courtroom. MCL 600.1701 provides, in relevant part:

> The supreme court, circuit courts, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:
>
> (a) Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority.
>
> (b) Any breach of the peace, noise, or disturbance directly tending to interrupt its proceedings.

Imprisonment for criminal contempt is appropriate where a defendant does something he was ordered not to do. *People v Ahumada,* 222 Mich App 612, 617; 564 NW2d 188 (1997). Contempt committed in the immediate view and presence of the court may be punished summarily by fine, imprisonment, or both. MCL 600.1711(1); *Ahumada, supra* at 618. Punishment for contempt is appropriate when it is "required

to restore order in the courtroom and to ensure respect for the judicial process." *Id.* at 618.

The court's power to punish individuals for contempt is not without limitations. "The contempt power is awesome and must be used with the utmost restraint." *In re Hague*, 412 Mich 532, 555; 315 NW2d 524 (1982). The courts have the responsibility to apply the contempt power judiciously and only when the contempt is clearly and unequivocally shown. *In re Contempt of Auto Club Ins Ass'n, supra* at 708. " 'The limits of the power to punish for contempt are the least possible power adequate to the end proposed.' " *People v Kurz*, 35 Mich App 643, 656; 192 NW2d 594 (1971), quoting *Harris v United States*, 382 US 162, 165; 86 S Ct 352; 15 L Ed 2d 240 (1965). Specifically, the United States Supreme Court recognized that a state's power to punish for contempt is limited by the extent of protection afforded by the First Amendment. *Pennekamp, supra* at 336.

The United States Supreme Court addressed the issue of criminal contempt for in-court statements regarding judicial bias in *In re Little*, 404 US 553, 554; 92 S Ct 659; 30 L Ed 2d 708 (1972). In *In re Little, supra* at 554, the trial court found the petitioner, a pro se criminal defendant, in contempt for stating, following the close of the evidence, that the judge was biased and had prejudiced the case and that the petitioner was a political prisoner. The Supreme Court reversed the judgment against the petitioner, concluding that petitioner's statements at trial did not constitute criminal contempt because the petitioner did not speak loudly, act boisterously, disobey a valid court order, or in any other way disrupt the court proceeding. *Id.* at 555-556. The Court explained that

statements made at trial alleging judicial bias, without more, are not enough to constitute criminal contempt. *Id.* The present case is similar to *In re Little* in that it involves an individual's in-court expression of his belief of judicial bias. As explained by the Supreme Court, this expression, by itself is not enough to constitute criminal contempt. However, appellant not only wore the shirt expressing his belief of judicial bias, but he willfully refused to obey the court's order to remove it or leave the courtroom. Although the statement on appellant's shirt, even if not constitutionally protected, was not enough to warrant a finding that appellant was in contempt, appellant's act of disobeying the trial court's order distinguishes this case from *In re Little.*

In the present case, appellant willfully disobeyed the trial court's order to remove his shirt or leave the courtroom. Appellant was on notice and understood what the trial court was ordering him to do, but still refused to obey the order. The trial court found appellant in contempt only after having given him several chances to obey its order. "A party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v Michigan High School Athletic Ass'n,* 459 Mich 23, 40; 585 NW2d 290 (1998). "Violations of an order are punishable as criminal contempt even though the order is set aside on appeal or though the basic action has become moot." *United States v United Mine Workers of America,* 330 US 258, 294; 67 S Ct 677; 91 L Ed 884 (1947) (citation omitted). Imprisonment for criminal contempt is

appropriate where a defendant does something he was ordered not to do. *Ahumada, supra* at 617. Therefore, despite our conclusion that the statement on appellant's shirt did not constitute an imminent threat to the administration of justice and was constitutionally protected speech, appellant's willful violation of the trial court's order, regardless of its legal correctness, warranted the trial court's finding of criminal contempt. Civil disobedience is not the appropriate course of action when a person disagrees with a court order. We are a society of laws and the legal remedy available to appellant was to seek leave to appeal the trial court's order precluding him from wearing his shirt. Appellant elected not to pursue his legal remedy,[8] and instead elected to willfully disobey a valid albeit erroneous court order. A person may not disregard a court order simply on the basis of his subjective view that the order is wrong or will be declared invalid on appeal. Allowing such behavior would encourage noncompliance with valid court orders on the basis of misguided subjective views that the orders are wrong. There exists no place in our justice system for self-help. " 'Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.' " *State Bar of Michigan v Cramer*, 399 Mich 116, 125; 249 NW2d 1

---

[8] On May 3, 2001, Cornell Squires filed a complaint for habeas corpus on appellant's behalf, which this Court denied. *Squires v Wayne Co Sheriff*, unpublished order of the Court of Appeals, entered May 4, 2001 (Docket No. 234097). A person may file a complaint for habeas corpus in order to release a prisoner from illegal confinement. However, appellant was not illegally confined because, as discussed, the criminal-contempt order was valid. Instead of filing a complaint for habeas corpus, appellant's proper avenue for relief was to apply for leave to appeal the trial court's order that he remove his shirt or leave the courtroom.

(1976), quoting *Maness v Meyers*, 419 US 449, 458; 95 S Ct 584; 42 L Ed 2d 574 (1975). " 'If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply promptly with the order pending appeal.' " *Id.*, quoting *Maness*, *supra* at 458. We note that an appeal does not stay the effect or enforceability of a trial-court order, but this Court has the power to stay a trial court's order pending appeal. MCR 7.209(A)(1).[9]  Therefore, appellant's appropriate course of behavior would have been to obey the trial court's order and then seek relief in this Court to prevent the trial court from prohibiting him from wearing the shirt in the courtroom during subsequent pretrial proceedings.

### V. PROPORTIONALITY OF APPELLANT'S SENTENCE

Appellant also argues that his sentence of twenty-nine days in jail was disproportionately high. However, appellant has fully served his twenty-nine-day sentence. "Where a subsequent event renders it impossible for this Court to fashion a remedy, an issue becomes moot." *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994). Because appellant has already served his sentence, we conclude that this issue is moot. *Id.*

Affirmed.

---

[9] The trial court also has the power to suspend, modify, restore, or grant an injunction during the pendency of an appeal if an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction. MCR 2.614(C).