*In re* DISSOLUTION OF THE LAPEER FARMERS MUTUAL
FIRE INSURANCE ASSOCIATION.

CLAIM OF CRAWFORD.

CLAIM OF NORTH BRANCH DEPOSITORS CORPORATION.

1. INSURANCE—MUTUAL FIRE COMPANY—ASSESSMENTS—PAYMENT—
   EVIDENCE.
   > On petition by guardian of an incompetent person and mortgagee,
   > against receiver in proceedings to dissolve a mutual fire insur-
   > ance company, to establish claim for fire loss which had been
   > duly adjusted as to amount and upon which partial payments
   > had been made, evidence *held*, to require finding that assess-
   > ments were paid and to require allowance of guardian's claim
   > subject to proper deductions on account of payments made and
   > assessments that had become due and subject to satisfaction
   > of mortgagee's claim against the fund.

2. APPEAL AND ERROR—EQUITY—HEARING DE NOVO.
   > Hearing on appeals in equity cases is *de novo*.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted April 28, 1937. (Docket No. 79, Calendar
No. 39,311.) Decided June 7, 1937.

In the matter of the dissolution of the Lapeer
Farmers Mutual Fire Insurance Association. M. E.
Crawford, guardian of the estate of Ben Klauka, a
mentally incompetent person, presented his claim
for loss by fire. Order denying claim. Petition by
North Branch Depositors Corporation, a Michigan
corporation, mortgagee, and M. E. Crawford for a
rehearing. From order denying rehearing, claim-
ants appeal. Reversed.

*George W. Des Jardins* and *John G. Libbers,* for claimants.

*Leibrand & Leibrand* (*Raymond W. Starr,* Attorney General, of counsel), for receiver.

BUTZEL, J. M. E. Crawford, as guardian of the estate of Ben Klauka, mentally incompetent, filed a claim in the proceedings to dissolve the Lapeer Farmers Mutual Fire Insurance Association in which Klauka and wife in 1925 took out a policy on their farm buildings and personal property. A mortgage clause with full contribution making the loss, if any, payable to the Pioneer Bank of North Branch, Michigan, was subsequently attached to the policy.

On October 2, 1932, a fire caused a partial loss of the buildings and personal property. The company adjusted the loss and its secretary advised the owners that it would pay the loss on the personal property and restore the buildings that had been destroyed. It placed the loss on its books at $2,550 on the buildings and $265.15 on the personal property. It made 20 payments aggregating $420 between April 11, 1933, and November 9, 1934, on account of its admitted liability.

Inasmuch as the amount paid to the Klaukas, or their representative, exceeded the amount of the adjusted loss on the personal property, it appears that the insurance company, pressed for funds, began to pay for the loss of the buildings instead of restoring them. On September 17, 1935, almost three years after the fire, a receiver was appointed for the insurance company by the Ingham county circuit court. Klauka and wife have been divorced and the property with the insurance claim evidently was

awarded to Klauka. He was adjudicated insane and Crawford, who was appointed guardian, filed a claim on December 30, 1935, against the company in the amount of $2,985.61, representing the sum of $2,550 for the loss on the buildings and also $435.61 for interest.

Mrs. Klauka, who subsequently remarried and became Mrs. Conant, makes no claim to any share in the insurance. The correctness of the amount of the claim has not been determined as the trial judge denied it *in toto*. If allowed, all payments made by the company and subsequent assessments must be deducted. Upon the hearing of claims, the receiver introduced an excerpt taken from the assessment roll for the year 1931 in which a number of policies, the amount and class, the assessment levied, the date of payment, columns showing payment and non-payment, and other notations appear. The number and amount of their policy is given and an assessment of $53.13 is shown and no date given as to when the assessment was paid nor is there any amount stated as being unpaid. In the blank space for memoranda, the name of the Pioneer Bank, North Branch, appears and also a pencil memorandum which states, "Hold out in fire loss." The North Branch Depositors Corporation succeeded to the bank's rights.

Section 8 of the charter of the company, as amended, provides that the secretary-treasurer shall, on or before the 15th of January of each year, mail notice of the assessment and amount due to each member of the association to his last known post-office address; that such assessment shall be due and payable to the association on or before the 15th day of February following. In default of payment, the member shall stand suspended until payment of the assessment, which shall be considered as a lien on

the insured property, and in case the assessment remains unpaid until the first of the following April, the secretary-treasurer shall cancel the delinquent member's insurance without relieving the member from liability for all sums due the association by virtue of such insurance. There is a further provision that the association shall not be liable for any loss or damage to the property which may happen during the suspension. It would appear that the affairs of the company were not very carefully handled. Though no amendment to the by-laws is shown in the record, the exhibits indicate that subsequently the time for the payment of the assessments was set at a date later than on or before February 15th of the year, the assessment for the year 1932 being payable on or before November 15th of that year and one for 1933 being payable on or before August 1, 1933.

Crawford's receipts for 1932 and 1933 assessments show that they were paid in "July," the receipts stating "to be deducted from claim." At the hearing on the claims before the trial judge, Mr. Crawford appeared as a witness for claimant, evidently without an attorney, and stated that he was unable to find the receipt for 1931 and asked for further time. The North Branch Depositors Corporation, which could easily have been misled by the fact that the claim for loss had already been allowed and payment made thereon, neglected or omitted to file any claim with the receiver until after the time when the judge disallowed Klauka's claim *in toto.* A motion for rehearing was filed by both of appellants and testimony was taken on the motion. Mrs. Conant testified that she had destroyed a number of papers when she remarried, long after the adjustment of the fire loss and that no previous question

had been raised as to the payment of premiums; that there were no assessments that she had not paid; that she was positive she had paid them in cash direct to the secretary of the company, and that she always paid the insurance premiums. A page containing a statement in the company's books relating to the loss shows that the loss on real estate was placed on the books at $2,550 and on the personal property at $266.15 and the amounts paid thereon totaled $420. There is no entry in this statement showing that the assessment was unpaid. The sole evidence of non-payment is the assessment roll with the pencil memorandum. The roll shows that at least two others of the 12 policyholders, whose names appear on the same page of the record, paid their assessments, evidently for 1931, in the year 1932. There is no showing whatsoever as to who made the pencil memorandum on the assessment roll. On the other hand, there is in evidence the testimony of Mrs. Conant that she paid all assessments; that the loss was adjusted without any objection; and 20 payments were made thereon; that further assessments were made for the years 1932 and 1933; that at the time of the fire, both insured and insurer believed the policy to be in force; that the assessment notices for 1932 and 1933 were both receipted for with a notation that they were to be paid out of the fire loss; that insured took out no new insurance after the time of the alleged suspension; and that in 1935 a notice of special assessment for the years 1931 and 1932 was mailed to the insured by the secretary-treasurer of the association. The latter notice contained also a column for the insertion of unpaid regular assessments. There was no amount claimed for unpaid regular assessments. On June 3, 1932, after the date when de-

fendant claims the policy was suspended, the association attached mortgage clauses to the policy. All these facts taken together corroborate Mrs. Conant's testimony that the assessments were paid. The judge, in denying the motion for rehearing, stated that the additional testimony was insufficient to warrant reversal of his original conclusion.

Hearing the motion *de novo*, the case being one in equity, we believe that there was more than sufficient testimony to establish the appellant's claim, notwithstanding the assessment roll with the penciled memorandum unexplained by any testimony as to how or when it was made by appellee, which acknowledged its careless method of conducting its business. There was further testimony on the part of the cashier of the bank that it had received no notice of nonpayment of the assessment. The judge, having considered all the testimony on the rehearing, should have allowed the claim of the guardian subject to proper deductions on account of payments made on the loss and assessments that had become due. Such sum should be paid to the North Branch Depositors Corporation to the extent of its interest, and the balance, if any, to Klauka's guardian.

As these amounts cannot be determined in this court, the case is remanded to the trial court to enter an order in accordance with this opinion. Appellants will recover costs.

Fead, C. J., and North, Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.