*In re* DISSOLUTION OF THE LAPEER FARMERS' MUTUAL
FIRE INSURANCE ASSOCIATION.

CLAIM OF RICE.

1. INSURANCE—DISSOLUTION OF MUTUAL FIRE COMPANY—ALLOWANCE
OF CLAIM FOR LOSS—EVIDENCE.

In proceedings to dissolve a farmers' mutual fire insurance
company, evidence *held*, to warrant allowance of claim to
mortgagors for fire loss on mortgaged realty with interest
from time of loss less credits for payments made thereon,
under showing made as to payment of assessments, notice
of reduction received by mortgagors shortly before the fire,
adjustment of loss after the fire and payments made thereon,
cancellation of policy nearly two years after the fire and
that mortgagee at time of fire no longer has an interest in
the property.

2. APPEAL AND ERROR—REMAND OF CASE—FURTHER TESTIMONY.

Upon disposition of appeal from denial of claim for fire loss
against receiver of farmers' mutual fire insurance company
whereby claim is allowed but case is remanded to determine
exact amount due those interested in the payment, appel-
lants' motion to remand to take further testimony on
whether or not assessments were paid is denied.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted June 14, 1940. (Docket No. 70, Calendar No.
40,960.) Decided October 7, 1940.

In the matter of the dissolution of the Lapeer
Farmers' Mutual Fire Insurance Association. John
H. Rice and others appeal from a denial of their
claim for fire loss. Reversed, and remanded for
determination of amount due claimants.

*John F. Jordan* and *Albert McClatchey,* for claim-
ants.

*Walter S. Foster,* for receiver and appellee.

BUTZEL, J.   This is an appeal by John H. Rice, Reina Rice, and others from a denial of their claim in the dissolution proceedings of the Lapeer Farmers Mutual Fire Insurance Association.   We are again confronted with the difficult problem of determining the facts of transactions conducted in a most careless and unbusinesslike manner, which we criticized in *Re Dissolution of the Lapeer Farmers Mutual Fire Insurance Association,* 280 Mich. 363.

In October, 1929, the Rices applied for fire insurance on their farm buildings and a policy for $3,400 was issued.   The coverage on the dwelling house was limited to $2,000.   The contract contained a mortgage clause to protect the interest of Charles W. Smith who held a mortgage on the property in the amount of $1,500.   The house was completely destroyed by fire on November 14, 1932.   The Rices, Smith, and Rice's assignees claimed the proceeds of the insurance; the claim was denied as to all.   Smith does not appeal.   The theory of the defense is not very clear.   It is undisputed that Rice himself did not pay the premium assessments in time to prevent lapse of coverage, and this was the ground for denial of the claim as to him and his assignees.   The Smith claim was denied on the ground that there was no longer any interest in the mortgagee, for the mortgage was discharged by payment in Federal farm loan bonds which were issued through a refunding mortgage loan by a Federal land bank.

The testimony as to payment of premium assessments was highly conflicting and inconsistent.   Mr. Rice claimed that he had an arrangement with the mortgagee whereby the latter was to pay the assessments when due, and it appears that when the Smith mortgage was discharged, the assessments sup-

posedly paid by the mortgagee were added to amount of the indebtedness and paid in bonds. The insurance contract contained a provision whereby the mortgagee might protect his coverage by paying the assessment premiums in the event that the insured mortgagor failed therein. Mr. Rice claimed that on one occasion, apparently after the fire, the association's secretary admitted having received payment of premiums from the mortgagee.

Mr. Smith, the mortgagee, testified that he paid all the assessments in due time to prevent lapse, and he produced receipts acknowledging payment of the 1930 and 1931 premiums. Payment of the 1931 premium would seem to keep the policy in force through the date of the loss. The correctness of Smith's testimony may well be doubted because of a three-month illness that left its imprint on his mental and physical condition.

The secretary of the association at first denied ever receiving any premium payments from Smith or Mr. Rice, and insisted that after the fire loss took place, in settling the amount of liability, the unpaid premiums were to be deducted from the amount of the loss. When confronted with the receipts, he was at first unable to explain their issuance, but later stated that they were issued after the fire but were probably dated back.

It appears that a letter dated October 28, 1932, was sent to Mr. Rice advising him that on request of Mr. Smith, the coverage on the dwelling was reduced to $1,500. The secretary of the association explained that Smith did not wish to pay for more than the amount necessary to cover his interest. In this connection the secretary acknowledged that Smith had been making the payments generally by check. But he insisted that the Rices had been suspended for nonpayment. The secretary later testified that there

was no dispute as to the liability of the association, but that there was "merely a dispute as to whom it should be paid." This is seemingly a flat contradiction of his prior testimony that no premiums for 1930 or 1931 were paid by anyone, and that there were no entries whatsoever in the association's cash receipts book to show that any premiums were ever paid. When asked why both Smith and the Rices were not suspended for nonpayment, the secretary stated that he probably had some agreement with Smith whereby he paid the premiums personally and then settled up with the association at the end of the year by giving his personal check. Later he testified that Smith came in in 1931 and paid the assessment and was reinstated, and that he continued to pay thereafter. The assessment rolls for 1931 and 1932 contain a memorandum to the effect that the assessment was paid by Smith, but no date of payment is indicated.

It is significant that the association acknowledged its liability for $1,500, and made an entry in its loss record book crediting Smith with this amount. Against this were charged payments made by check on account to Rice, Smith, or to them jointly totalling $320, from November, 1933, to August, 1934. Then the ledger account shows assessments allowed as an additional credit for the years 1930 through 1933 on the Rice policy and for two and a half years on another policy. These entries, plus the evidence of no entries in the cash receipts book, are the only proofs that the payments had not been made in time to prevent the policy from lapsing at the time the loss occurred in 1932. There is other testimony by the secretary that, in many other instances, the association did not insist upon its right of cancellation for nonpayment, but merely deducted the amount of unpaid premiums whenever a loss occurred.

While at first the secretary testified that the Rices were suspended for nonpayment of premiums, that Smith became the only insured, and that a new policy was issued directly to him, the other proofs and subsequent testimony of the same witness do not support this theory. The alleged policy issued to Smith was never produced in evidence nor accounted for. At all subsequent times Rice was still regarded as the insured, subject to the mortgage interest of Smith, and the records of the association so indicate. Rice was given a notice of reduction of amount of insurance after the supposed suspension, and some of the payments on the loss were made by check to Rice alone or to Smith and Rice jointly. The secretary of the association finally admitted that the only notice of cancellation or suspension sent to the Rices was in 1934, after the events here in question. We think that Rice was still to be regarded as the insured, subject to the loss payable clause as the interest of Smith might appear.

From an examination of the testimony *de novo,* the notation "Pd." in the assessment roll for 1931, the receipt issued to Smith therefor, the notice of reduction sent to the Rices about two weeks before the fire, the adjustment of the loss at $1,500 after the fire, the fact that the policy was not cancelled until 1934, and the fact that payments were made on the loss as adjusted, indicate to us that the policy was still in force at the time of the fire, and since Smith no longer has any interest in the property covered, the Rices are entitled to coverage to the extent of $1,500. Recovery may be had for this amount with interest from the time of the loss less credits for payments made. The case will be remanded with an order to determine the exact amount due Rice and those claiming under him, and claims for their respective interests may be allowed.

This disposition of the case obviates further discussion of other questions raised.

The motion to remand to take further testimony is denied. Appellants will recover costs.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred. The late Justice POTTER took no part in this decision.