*In re* ESTES.

1. ATTORNEY AND CLIENT—ATTORNEY'S BELIEF IN CLIENT'S CAUSE.
   The lawyer who believes in his client's cause is all the more effective therefor.

2. SAME—CRITICISM OF OFFICERS.
   An attorney for a client is generally granted a wide latitude in criticizing official actions of any of the branches of government.

3. COURTS—CRITICISM BY ATTORNEYS.
   Courts are not, and should not be, immune to criticism, and a lawyer has a duty to submit his grievances to the proper authorities whenever there is proper ground for serious complaint of a judicial officer (Canons of Professional Ethics, No 1).

4. ATTORNEY AND CLIENT—CRITICISM OF JUDGES—SUSPENSION.
   The suspension from practice of an attorney for the period of 1 year for criticism of a judicial officer is a recognition of a limit upon the exercise of the attorney's rights to criticize governmental officers, the proper exercise of which is viewed with great favor (Canons of Professional Ethics, No 1).

5. SAME—CRITICISM OF JUDGES—DECISION OF CASES.
   An attorney's belief that a trial judge has made a serious error in deciding an important case is not a proper ground for his charging in an official court record that the judge had violated his oath of office and illegally and unlawfully collaborated with the prevailing party (Canons of Professional Ethics, No 1).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur, Attorneys at Law §§ 46, 47.
[2–8, 10, 11, 13] 5 Am Jur, Attorneys at Law § 266.
   Criticism of opinion or decision of court as ground for disbarment of attorney.  53 ALR 1244.
[9, 12] 5 Am Jur, Attorneys at Law § 300.
   2 Am Jur, Appeal and Error § 114.
[10] 5 Am Jur, Attorneys at Law § 293 *et seq.*
[11] 5 Am Jur, Attorneys at Law § 289.
[13] 5 Am Jur, Attorneys at Law § 301.

6. SAME—CRITICISM OF JUDGES—BRIEFS—SUSPENSION FROM PRACTICE.

Record on appeal in nature of certiorari from determination of 3-judge court suspending an attorney from practice for period of 1 year *held,* not to show a proper ground or adequate basis for serious complaint of a judicial officer within the meaning of the Canons of Professional Ethics, the language of the attorney's brief of which complaint was made being the language of insult and contempt (Canons of Professional Ethics, No 1).

7. SAME—CRITICISM OF JUDGES—CONTEMPT—UNPROFESSIONAL CONDUCT.

The fact that language used by attorney in brief filed in Supreme Court wherein he criticized action of the trial judge in language which constituted insult and contempt and might well have been punished in contempt proceedings does not make it any the less unprofessional in character (CL 1948, § 605.1; Canons of Professional Ethics, Nos 1, 15).

8. SAME—DEFENSE OF CLIENTS—UNSUPPORTED CHARGE OF CONSPIRACY AND CORRUPTION ON PART OF OTHER ATTORNEYS AND TRIAL JUDGE.

The privilege of an attorney to go to great lengths in the defense of himself or his client in proceedings in court, without being held responsible out of court for what he has said or done in court does not carry with it the right to charge fellow attorneys and the presiding judge with conspiracy and corruption, when there is no adequate basis for such a charge (Canons of Professional Ethics, Nos 1, 15).

9. SAME—SUSPENSION FROM PRACTICE—REVIEW BY SUPREME COURT.

The review by the Supreme Court of proceedings culminating in an order by a 3-judge court suspending an attorney from practice for a period of 1 year is by appeal in the nature of certiorari, not *de novo.*

10. SAME—SUSPENSION FROM PRACTICE—UNSUPPORTED CHARGES AS TO JUDICIAL INTEGRITY OF TRIAL JUDGE.

Evidence presented in record in proceedings resulting in suspension of attorney from practice for period of 1 year *held,* to warrant the 3-judge court in holding the attorney had violated provisions of Canons of Professional Ethics, where it appears that he made unsupported charges in a brief in the Supreme Court reflecting adversely upon the trial judge's judicial integrity in that he had illegally and unlawfully collaborated with the prevailing party (Canons of Professional Ethics, Nos 1, 15).

11. SAME—UNPROFESSIONAL CONDUCT—SUSPENSION FROM PRACTICE— DUE PROCESS.

> No abuse of due process as to attorney suspended from practice for period of 1 year for unprofessional conduct *held,* shown to have been made upon review of complete record of investigation, filing of complaint by the State Bar, hearing of its grievance committee or at show-cause hearing before 3-judge court which made order of suspension, in view of the attorney's own dilatoriness and disinclination to present testimony.

12. SAME—SUSPENSION FROM PRACTICE—SUPREME COURT—JURISDICTION.

> The Supreme Court is not deprived of jurisdiction to hear appeal from order of 3-judge court suspending an attorney from practice by reason of the fact that the Supreme Court had originally forwarded the briefs in question to the State Bar association for investigation, where the complaint acted upon was that of the State Bar.

13. SAME—SUSPENSION FROM PRACTICE—REINSTATEMENT.

> The requirement that attorney apply for reinstatement is regarded as largely a formality, where the basic penalty of 1 year's suspension from practice has long since been served for offense that was specific and not of a continuing nature, if there has been compliance with the order.

Appeal from Ingham; Boardman (Harry D.), Smith (Raymond L.), and Sweet (Lucien F.), JJ., *en banc,* presiding. Submitted October 10, 1958. (Docket No. 42, Calendar No. 45,724.) Decided February 19, 1959. Certiorari denied by the Supreme Court of the United States October 12, 1959.

In the matter of Walter O. Estes, a member of the State Bar. Upon recommendation and charges filed by the State Bar of Michigan, respondent was disbarred for 1 year for intemperate language relative to trial judge contained in briefs filed on appeal to Supreme Court. Affirmed.

*Wilfred H. Erwin,* for Sixth District Grievance Committee of the State Bar of Michigan.

*Walter O. Estes,* defendant *in propria persona.*

EDWARDS, J.   From Lord Mansfield to Joseph Welch, the lawyer who fought for cause or client against great odds has played a vital role in the defense of human freedom.   We preface this opinion with recognition of the great value of the legal advocate and the frequent need for zeal and boldness in such advocacy.*

The lawyer who believes in his client's cause is all the more effective therefor; and the courts have generally granted him a wide latitude in criticizing official actions of any 1 of the 3 branches of government.   Courts are not, and should not be, immune to criticism.   (See *Konigsberg* v. *State Bar of California*, 353 US 252, 268, 269 [77 S Ct 722, 1 L ed 2d 810].)   Indeed, the very first of the Canons of Professional Ethics of the Bar† imposes a duty upon the lawyer to submit his grievances to the proper authorities "whenever there is proper ground for serious complaint of a judicial officer."

We preface this opinion with this restatement of general principles because we deal here with the appeal of an advocate suspended for 1 year for unprofessional conduct in his advocacy of his clients' cause and because our affirmance can only be construed as recognition of a limit upon the exercise of rights, the proper exercise of which we view with great favor.

This case represents an aftermath of 1 of the most bitter legal conflicts ever to occur in the State of Michigan.   The controversy had its origin in the failure of the Lapeer Farmers' Mutual Fire Insurance Association and subsequent assessments made upon certain Lapeer county farmers as a result

---

* See Stryker, *The Art of Advocacy*.

† See American Bar Association, Canons of Professional and Judicial Ethics and Opinions (1957); State Bar Rule No 14, 317 Mich xlvi, 343 Mich xli–xliii, 351 Mich xv; Honigman, Michigan Court Rules Annotated, p 814, and 1957 Supp, appendix 7, p 316 *et seq.*; 29 MSBJ, No 5 (May, 1950).—REPORTER.

thereof. Its legal history is recorded in at least 14 cases in which appeals were taken to, and ultimately decided by, this Court.[*]

Appellant in this case was 1 of the attorneys for the farmers in several of these cases and filed a number of briefs in the course of their progress to final decision. Briefs filed in 3 cases occasioned the entry of a Supreme Court order of reference to the State Bar association on June 27, 1950, directing attention to the remarks of counsel for appellants contained in said briefs.

After investigation the State Bar filed a formal complaint against appellant and 3 other lawyers whose names were on the same briefs, alleging professional misconduct and breach of the Canons of Professional Ethics in certain portions of the briefs referred to, which portions were attached as exhibit B.

The complaint was referred to the sixth district grievance committee for hearing and disposition under the Supreme Court Rules concerning the State Bar of Michigan, particularly Rule No 15.[†]

---

[*] *Simpson v. Goodrich*, 280 Mich 351; *In re Dissolution of The Lapeer Farmers Mutual Fire Insurance Association (Claim of Crawford; Claim of North Branch Depositors Corporation)*, 280 Mich 363; *In re Gilliland*, 284 Mich 604; *In re Dissolution of The Lapeer Farmers' Mutual Fire Insurance Association (Claim of Rice)*, 295 Mich 218; *Attorney General, ex rel. Commissioner of Insurance*, v. *Lapeer Farmers Mutual Fire Ins. Assn.*, 297 Mich 174; *Attorney General, ex rel. Commissioner of Insurance*, v. *Lapeer Farmers Mutual Fire Ins. Assn.*, 297 Mich 188; *Attorney General, ex rel. Commissioner of Insurance*, v. *Lapeer Farmers Mutual Fire Ins. Assn. (Appeal of Rice)*, 300 Mich 320; *Commissioner of Insurance* v. *Lapeer Circuit Judge*, 302 Mich 614; *Emery v. Clark*, 303 Mich 461; *Attorney General, ex rel. Commissioner of Insurance*, v. *Lapeer Farmers' Mutual Fire Insurance Association (Appeal of Warner)*, 318 Mich 60; *Attorney General, ex rel. Commissioner of Insurance*, v. *Lapeer Farmers' Mutual Fire Insurance Association (Appeal of Turner)*, 325 Mich 655; *Attorney General, ex rel. Commissioner of Insurance*, v. *Lapeer Farmers' Mutual Fire Insurance Association*, 327 Mich 333; *Forbes v. Ziegenhardt*, 328 Mich 187; *Attorney General, ex rel. Commissioner of Insurance*, v. *Lapeer Farmers' Mutual Fire Insurance Association (Appeal of Ziegenhardt)*, 337 Mich 681.

[†] 317 Mich xlvi–lx, as amended; 343 Mich xliii–lxiii.—REPORTER.

After notice of hearing and 1 adjournment, the complaint came on for hearing. At the time of hearing, appellant had filed no answer, although required to do so by State Bar Rule (Rule No 15, § 6).* He did appear and at the hearing he filed and argued a lengthy motion to dismiss, based largely upon an attack on the committee's jurisdiction. This motion was denied, as was a subsequent motion for adjournment, and the grievance committee went ahead to hear testimony on the complaint.

As far as appellee's case is concerned, the testimony consisted only of identification of the challenged briefs by the then deputy and subsequently clerk of the Supreme Court. Appellant offered no testimony but in oral argument made clear that he "wrote every word contained in those briefs." In fact, appellant went out of his way to assume complete individual responsibility for the challenged language of the briefs and reiterated his contention that it represented "the absolute truth."

Despite this contention, appellant contented himself with oral argument principally addressed to claimed defects in the proceedings and to asserted lack of jurisdiction of the committee over the proceedings. He was twice asked whether he had any testimony to present and answered negatively, finally saying "I know of no evidence   *   *   *   I think that is the evidence right there," apparently referring to the briefs.

The sixth district grievance committee, after allowing appellant to file an answer and considering the briefs submitted by the parties, filed its opinion in the matter. The committee found appellant and 1 other lawyer guilty of unprofessional and unethical conduct and recommended disbarment for a limited period of time.

---

* 317 Mich xlvi–lx, as amended; 343 Mich xliii–lxiii.—REPORTER.

In accordance with the Rules governing the State Bar, the grievance committee certified its report and filed it with the Ingham county circuit court (State Bar Rule No 15, §§ 11, 13), whereupon the clerk thereof issued an order to the appellant to show cause why the report should not be confirmed, and the presiding circuit judge of Michigan designated 3 circuit judges to hear the matter (State Bar Rule No 15, § 15).

At the time of hearing appellant had filed no objections to the report, although required to do so by State Bar Rule (Rule No 15, § 11). But he again appeared and filed a belated motion to dismiss challenging the jurisdiction of the court on various grounds. Objection was made to argument of his motion on the ground that counsel for the State Bar had not had a copy of the motion in time to prepare for argument (Court Rule No 10, § 2 [1945]). The court sustained the objection, but allowed appellant to submit a brief for court consideration on the points concerned, with an answering brief to be filed by opposing counsel.

Appellant again tendered no testimony and answered in the negative the court's question as to whether there was anything else to come before the court.

Upon consideration of the certified record made before the grievance committee and its report and recommendations, and the briefs filed by the various parties, the 3-judge court entered a formal opinion approving the grievance committee's report and suspending appellant from the practice of law for 1 year, and until subsequent application for reinstatement. The opinion also found mitigating circumstances as to the other attorney found guilty of unprofessional conduct and ordered a private reprimand by the grievance committee as to him. From this portion of the order no appeal was taken.

On December 29, 1952, appellant filed his claim of appeal from the order of suspension entered in his case. The record on appeal was filed November 19, 1953. Nothing further was done until July 7, 1958, when appellant filed his brief and noticed the matter for hearing at the October, 1958, term. The period of suspension has, of course, long since run (no stay having been granted), but no application for reinstatement has been filed. We are tendered no explanation for the extraordinary delay but assume the matter is finally brought to decision as a result of our recently-adopted *No Progress Rule* (Court Rule No 70 B, effective April 14, 1958).*

The opinion of the 3-judge court held that appellant had been guilty of conduct which violated professional ethics, and particularly the preamble and Canons 1 and 15 of the Canons of Professional Ethics which follow:

"PREAMBLE

"In America, where the stability of courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of the Republic, to a great extent, depends upon our maintenance of justice pure and unsullied. It cannot be so maintained unless the conduct and the motives of the members of our profession are such as to merit the approval of all just men.

"No code or set of rules can be framed, which will particularize all the duties of the lawyer in the varying phases of litigation or in all the relations of professional life. The following canons of ethics are adopted by the Supreme Court of the State of Michigan as a general guide for the State Bar of Michigan.

* 352 Mich xvii.—REPORTER.

The enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned."

\* \* \*

"CANON 1. THE DUTY OF THE LAWYER TO THE COURTS

"It is the duty of the lawyer to maintain towards the courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected."

"CANON 15. HOW FAR A LAWYER MAY GO IN
SUPPORTING A CLIENT'S CAUSE

"Nothing operates more certainly to create or to foster popular prejudice against lawyers as a class, and to deprive the profession of that full measure of public esteem and confidence which belongs to the proper discharge of its duties than does the false claim, often set up by the unscrupulous in defense of questionable transactions, that it is the duty of the lawyer to do whatever may enable him to succeed in winning his client's cause.

"It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause.

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the

client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client."

The opinion of the 3-judge court cited in particular certain portions of the briefs written by appellant which attacked the integrity of Judge Herman Dehnke, the judge who had originally tried some of the Lapeer cases:

"The trial court not only failed and refused to assert the illegality of the appellants' contract and the inability on the part of the receiver to collect an assessment thereon, but collaborated with the receiver and his attorney by striking this material defense from the appellants' answer—the trial court stripped the appellants of their defense by striking all pleadings that pointed a finger of such illegality and thereby joined in the efforts of the receiver and his attorney to wrongfully, inequitably and unlawfully enforce an illegal contract.    *    *    *

"The manner in which this matter was conducted by the trial court, the type of notice given, the language of the opinion and the decision rendered, are all in violation of all concepts of fair and judicious handling of the rights and property of citizens by a court of justice, and help to confirm the claim of disqualification filed on 2 separate occasions against the trial judge in this matter. It is obvious that this petition of appellants was never heard on its merits and that the trial court never intended that it should be heard.    *    *    *

"This was an opinion held by the court because of his readiness to believe the vicious propaganda cir-

culated at every opportunity for the purpose of preventing the exposure of fraud.   *   *   *

"The trial court in this case has violated every rule in the books of sportsmanship, fair play, due process, fair trial, equal protection of the law, sanctity of contracts, duty of officers, honor and respect of the law of the land.  He would shield and protect those who have violated the insurance laws of the State and punish those who were supposed to have been protected by those laws; he would overlook the flagrant disregard of the insurance laws by the commissioner of insurance and the attorney general and overreach his own authority and jurisdiction, yes, even, violate the fundamental law of the land, the statutes and Canons of Judicial Ethics, in his zeal to punish parties who are legally entitled to the protection of those officers and the court; he would put the honor and the reputation of the court on the block in obvious violation of his oath of office, when by simply following the rules of law, principles of justice and the principles of fair play, he could help so much to place the court on the pedestal of high respect where it must be kept if our system is to work."

All of the quoted material is extracted from the brief written and filed by appellant in *Forbes* v. *Ziegenhardt,* 328 Mich 187.  This appeal was from a denial by Judge Dehnke of a petition to vacate a decree of foreclosure entered July 26, 1943, and from which no appeal was taken.  The petition was filed September 8, 1948.  Among other things it alleged that fraud had been perpetrated upon the court by plaintiff Forbes in the original foreclosure suit, and that petitioners now possessed new evidence tending to prove fraud.  The petition made no charges as to the trial judge's conduct in the original proceedings and alleged no facts which in any way reflected upon his judicial integrity.

Judge Dehnke dismissed the petition upon motion and after argument and briefs upon the doctrine of *res judicata,* holding that the alleged "new facts" of the petition were all facts known to, or readily available to, petitioners at the time of the original proceeding.   The question of whether he was right or wrong in this decision is not now before this Court. Suffice it to say that his decision was affirmed by the Supreme Court in *Forbes* v. *Ziegenhardt, supra,* and that at no place in the record of this case do we find 1 fact recited from which it could be deduced that the trial judge had been guilty of fraud, corruption or, indeed, of any sort of improper conduct unless his entering of a decision in a hotly-disputed case upon what he conceived to be the law could be so termed.

We view the language set forth above from appellant's brief in the *Ziegenhardt Case* as a direct attack upon the integrity of the trial judge.   Neither in the *Ziegenhardt Case,* nor in the instant proceeding, have we noted any attempt by appellant to suggest facts which could represent reasonable grounds for such charges except his arguments pertaining to claimed error in the judge's decision.

The fact that a lawyer deeply believes a trial judge has made a serious error in deciding an important case is hardly proper ground for his charging in an official court record that the judge had violated his oath of office and illegally and unlawfully collaborated with the prevailing party.

There is no indication here of "proper ground for serious complaint of a judicial officer" within the meaning of Canon 1 of the Canons of Professional Ethics.   The language used is, on the contrary, when totally unsupported by fact, the language of insult and contempt.   The fact that it might well be punishable in contempt proceedings (see CL 1948, § 605.1

[Stat Ann § 27.511]) does not make it any the less unprofessional in character.

Appellant's brief relies strongly upon the following language from *Hartung* v. *Shaw*, 130 Mich 177, 179:

"If statements made in the course of judicial proceedings, in pleadings or in argument, are relevant, material, or pertinent to the issue, their falsity or the malice of their author is not open to inquiry. They are then absolutely privileged."

Without re-examining this holding, we feel it is obviously inapplicable to the current situation. *Hartung* v. *Shaw* was a libel action and not a proceeding which, as here, concerned a charge of violation of professional ethics.

In the leading case in Michigan dealing with a similar problem, this Court said:

"An attorney ought not to be disbarred unless the duty of the court is very clear. We are not unmindful of the fact that an attorney is privileged to go great lengths in the defense of himself or his client in proceedings in court, without being held responsible out of court for what he has said or done in court; but this privilege does not carry with it the right to charge fellow attorneys and the presiding judge with conspiracy and corruption, when there is no adequate basis for such a charge. The law is tersely stated in *People, ex rel. Rogers,* v. *Green,* 9 Colo 506, 533 (13 P 514):

" 'Neither the letter nor the spirit of the attorney's privilege permits him to enter our courts and spread upon judicial records charges of a shocking and felonious character against brother attorneys, and against judges engaged in the administration of justice, upon mere rumors coupled with facts which should, of themselves, create no suspicion of official corruption in a just and fair mind. And although, in actions of libel and slander, it has been thought wise

to exempt them from liability for defamatory words, published or spoken, in the course of judicial proceedings, provided such words are material, in a disbarment proceeding the recognition of such a privilege could neither secure justice nor advance the independence of the bar. On the contrary, its inevitable tendency would be to destroy the respect due to the profession as well as to the bench, and cripple the influence and usefulness of both.'" *In re Mains,* 121 Mich 603, 610.

In proceedings of this sort, our review is in the nature of a writ of certiorari. We do not hear the appeal *de novo. Attorney General* v. *Lane,* 259 Mich 283. We find in this record "no adequate basis" for the charges made by appellant. We do find evidence which warranted the 3-judge court in holding that appellant had violated those portions of the Canons of Professional Ethics which we have previously quoted.

We have reviewed the complete record with care. We cannot see that any prejudicial error was made in the investigation, the filing of the complaint by the State Bar, in the hearing of the grievance committee, or at the show-cause hearing before the 3-judge court. Appellant has his own dilatoriness and disinclination to present testimony to blame for any inadequacies in the present record. We find no abuse of due process.

Nor do we believe that this Court is deprived of jurisdiction to hear this appeal by the fact that this Court originally forwarded the briefs in question to the State Bar association for investigation. The complaint acted upon was that of the State Bar.

The basic penalty of 1 year's suspension imposed by the order of the 3-judge court has, of course, long since been served. On the record presented here, since the offense complained of was specific and not of a continuing nature, the added requirement of

application for reinstatement must be regarded as largely a formality, provided, of course, there has been compliance with the order. It would seem highly desirable for said requirement to be met without further delay so as to bring to a close an unhappy chapter of Michigan legal history.

Affirmed.

DETHMERS, C. J., and CARR, KELLY, SMITH, VOELKER, and KAVANAGH, JJ., concurred.

BLACK, J., took no part in the decision of this case.