670 N.W.2d 563 (2003)
GRIEVANCE ADMINISTRATOR, ATTORNEY GRIEVANCE COMMISSION, STATE of Michigan, Petitioner-Appellant,
v.
Geoffrey N. FIEGER, Respondent-Appellee.
Docket No. 122564, ADB No. 94-186-GA.
Supreme Court of Michigan.
October 30, 2003.
On order of the Court, the application for leave to appeal from the September 30, 2002 decision of the Attorney Discipline Board is considered and, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.
MICHAEL F. CAVANAGH, J., concurs and states as follows:
I concur in the denial of leave to appeal for the reason that deference is owed by this Court to the determinations of the Attorney Discipline Board. However, in my judgment, respondent's statements, which the ADB found to be "`rhetorical hyperbole,' `parody' or `vigorous epithet'" came at the outermost edge of what may escape sanction under the Michigan Code of Professional Responsibility. In re Chmura, 461 Mich. 517, 608 N.W.2d 31 (2000); In re Chmura (After Remand,), 464 Mich. 58, 626 N.W.2d 876 (2001). Given that political speech is entitled to more protection than nonpolitical speech, and the criticism here related to an elected official's performance of his duties, it appears arguable that Chmura II was not inappropriately applied. This order should not be constructed as signaling any reduced interest on the part of this Court in upholding standards of professional civility and in enforcing attorney discipline when allegedly libelous or slanderous remarks are made by attorneys. I believe that the respondent's remarks here were irresponsible and reprehensible, but ultimately I would defer to the judgment of the Attorney Discipline Board that they were not sanctionable under Chmura I and II.
CORRIGAN, C.J., dissents and states as follows:
I respectfully dissent from the majority's order denying leave to appeal. Because the statements in question were not made by or about a political candidate and are not otherwise political speech, I do not believe the analysis found in In re Chmura (After Remand), 464 Mich. 58, 626 N.W.2d 876 (2001) (Chmura II), applies. Further, even if the analysis in Chmura II does apply, the statements contained objectively factual and provably false connotations and are therefore outside the scope of protected speech. Finally, I note that this case highlights what I believe is a troubling disparity in the discipline of similarly situated attorneys. I would grant leave to appeal to clarify the governing legal standards. I do not find any compelling distinction between respondent's conduct from that described in Grievance Administrator v. Raaflaub, Docket No. 124496, 668 N.W.2d 146 (Mich.2003); In re Estes, 355 *564 Mich. 411, 94 N.W.2d 916 (1959); and In re Mains, 121 Mich. 603, 80 N.W. 714 (1899). The difference is in degree, not in kind.

I. Background
This complaint concerns two statements Geoffrey Fieger made regarding Ionia County Prosecutor Raymond Voet. In an interview published under the title "Attorney claims Voet in coverup" in the February 20, 1993, issue of the Ionia Sentinel-Standard, Mr. Fieger was quoted as stating, "As far as I'm concerned the prosecutor is engaged in a cover-up," and "The prosecutor has done nothing in this investigation. He's covering up a murder." The complaint alleges that these statements violated MRPC 8.2(a), which provides:
A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicative officer, or public legal officer, or of a candidate for election or appointment to judicial or legal office.
After a rather lengthy procedural history, the hearing panel in this case dismissed the above portion of the complaint, and the Attorney Discipline Board affirmed the decision of the panel in a split decision, with three members shown as dissenting. Both the hearing panel and the ADB found Chmura II controlling. The hearing panel concluded that the statements were core political speech because they were mere statements of opinion or could reasonably be interpreted as communicating constitutionally protected hyperbole, parody, or vigorous epithet. The majority of the ADB agreed that the remarks could be read as gross exaggerations to convey the view that the prosecutor's investigation reached the wrong conclusion and dismissed the complaint. The Grievance Administrator then appealed to this Court.

II. Chmura II is Inapplicable Because the Statements Were Not Political Speech
I cannot so easily conclude that these statements amounted to core political speech. As the United States Supreme Court noted in Meyer v. Grant, 486 U.S. 414, 421, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988):
"The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." [ Thornhill v. Alabama, 310 U.S. 88, 101-102, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).] The First Amendment" was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). [Emphasis added.]
It is well established that demonstrable falsehoods do not share the same First Amendment protections as truthful statements. Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Although the statements at issue here were made publicly, they were not truthful. Therefore, the statements do not constitute protected First Amendment speech regarding a matter of public concern because the subject matter of the statements was patently false. An individual making false statements may not enjoy First Amendment protection for political speech simply by directing those false statements toward a public official. Accordingly, I fail to see how the statements, whose falsity has not been disputed, can constitute "core political speech" and therefore receive the highest protection available under the First Amendment.
*565 Further, unlike the respondent in Chmura II, Mr. Fieger was not a political candidate, nor did his statements concern any political election. Chmura II concerned only the Judicial Canons and the First Amendment rights of judicial candidates. This Court expressly noted the limits of its reach:
When analyzing whether a judicial candidate has violated the canon, we conclude that the communication at issue must have conveyed an objectively factual matter. Thus, speech that can be reasonably interpreted as communicating hyperbole, epithet, or parody is protected, at least under Canon 7(B)(1)(d). [Chmura II, supra at 93, 626 N.W.2d 876 (emphasis added).]
Nothing in Chmura II addressed the Michigan Rules of Professional Conduct at issue here, and neither the hearing panel nor the ADB explained why the extreme protection afforded the political speech of judicial candidates should apply with equal force to objectively false statements made by lawyers in the course of ordinary speech. In the absence of any authority or explanation, I am loath to apply such stringent First Amendment protections to all speech by lawyers, including objectively false statements, that are otherwise governed by MRPC 8.2(a).

III. Even Under the Chmura II Analysis, the Statements are Outside the Bounds of Protected Speech
Even assuming that Chmura II applies in this case, the statements do not constitute protected political speech because they contain objectively factual and provably false connotations. In Chmura II, this Court held:
If the communication at issue sets forth objectively factual matters, the communication must then be analyzed to determine whether the statements communicated are literally true.... [I]f the public communication conveys an inaccurate statement, the communication, as a whole, must be analyzed to determine whether "the substance, the gist, the sting" of the communication is true despite such inaccuracy. Once it has been determined that a judicial candidate has, in fact, made a false public communication, the inquiry then focuses on whether such communication was made knowingly or with reckless disregard. [ Id. at 93, 626 N.W.2d 876.]
Further, this Court noted that whether the false communication was made with reckless disregard is determined by using an "objective person" standard. Id. at 68, 626 N.W.2d 876. Therefore, to avoid censure for false public communications, the statements must be supported by a reasonable factual basis. Id.
Here, the statements concerned objectively factual matters: whether the prosecutor conducted no investigation and covered up a murder. There is no dispute that the statements were false: the prosecutor did conduct an investigation and did not cover up a murder. Under Chmura II, we must then determine whether "the substance, the gist, the sting" of the communication is true despite such inaccuracy. The comments as a whole were false; no serious argument can be made that the "gist" of the statements was true despite their falsity. Further, contrary to the distinction drawn in Justice Cavanagh's statement, nothing in Chmura II suggests that greater protection should be afforded objectively false statements concerning an elected official's nonfeasance as opposed to malfeasance.
This leads to the final step in the analysis: determining whether the false public communication was made knowingly or with reckless disregard. Even if the statements were not made knowingly, no reasonable factual basis exists to support *566 them. Therefore, even applying the Chmura II analysis, the statements are not protected political speech.
Finally, the conclusion of the hearing panel and the ADB that the statements were merely matters of opinion because they were prefaced with "As far as I'm concerned" is untenable under the Chmura II analysis. There, this Court clarified that "an expression of opinion is protected under the canon as long as it does not contain provably false factual connotations." Id. at 93, 626 N.W.2d 876 (emphasis added). Simply concluding that a statement is an expression of opinion does not suffice to end the inquiry. As explained above, the statements contained provably false factual connotations and protection as expressions of opinion therefore cannot be claimed, regardless of how they were prefaced.

IV. The Disparity in Attorney Discipline is Unjustifiable
Finally, apart from the erroneous legal analysis applied by the hearing panel and the ADB, I believe this case highlights inconsistent disciplinary treatment given to similar conduct. In Grievance Administrator v. Raaflaub, supra, the ADB suspended attorney David H. Raaflaub for one year for stating, among other things, that the prosecutor was engaged in conspiracies and abused his powers of office. I am unable to distinguish the substance of the statements regarding the conspiracies and abuse of office made by Mr. Raaflaub from those made by Mr. Fieger. Rather than conclude that, like the statements made by Mr. Fieger, Mr. Raaflaub's statements were protected political speech because they were "gross exaggerations to convey the view the prosecutor's investigation reached the wrong conclusion," the ADB found that Mr. Raaflaub made statements he knew to be false or made statements with reckless disregard of their truth or falsity. Further, the ADB did not distinguish in its opinion the statements regarding the conspiracies and abuse of office that were similar to those made by Mr. Fieger from the other statements made by Mr. Raaflaub.
In finding a one-year suspension appropriate, the ADB noted that other cases suggested that unfounded accusations like those made by Attorney Raaflaub may result in an extended suspension. One such case is In re Estes, supra. In that case, this Court upheld a one-year suspension for an attorney who falsely accused a trial judge with conspiring with the prevailing party in the litigation. We held:
The fact that a lawyer deeply believes a trial judge has made a serious error in deciding an important case is hardly proper ground for his charging in an official court record that the judge had violated his oath of office and illegally and unlawfully collaborated with the prevailing party. [Id. at 422, 94 N.W.2d 916.]
See also In re Mains, supra at 610, 80 N.W. 714 (stating that the attorney's privilege does not permit the attorney "to enter our courts and spread upon judicial records charges of a shocking and felonious character against brother attorneys, and against judges engaged in the administration of justice, upon mere rumors coupled with facts which should of themselves create no suspicion of official corruption in a just and fair mind." [Citation omitted]).
I fail to see how it can be improper for an attorney to charge a judge with violating his oath and engaging in illegal activity if the attorney feels the judge erred, but constitutionally protected speech if the attorney charges a prosecutor with violating his oath and engaging in illegal activity if the attorney feels the prosecutor erred. In both situations, the attorney has made statements either known to be false or *567 with reckless disregard of their truth or falsity. I question the notion that the attorney's choice of forum determines whether the objectively false statements receive First Amendment protection or are subject to discipline. Rather it seems that whether the objectively false statements are uttered to the press or on the steps of the courthouse, although possibly relevant to the degree of discipline, should be irrelevant to the determination whether the false statements are protected speech. In both situations, therefore, I believe discipline is warranted and I fail to grasp how the former can be the grounds for disciplinary action while the latter is protected speech.
I find this disparate treatment for similar conduct extremely troubling. The ADB has not satisfactorily explained how it can dismiss one attorney's complaint on the ground that the statements were core political speech, yet suspend another attorney for one year for similar statements that, under the analysis used in the first case, should also constitute core political speech. This disparity, which is yet to be justified, underscores my concerns regarding the disposition of this case. This disparity also underscores why this Court should not simply affirm the ADB's determination out of "deference." To do so is a retreat from this Court's efforts in Grievance Administrator v. Lopatin, 462 Mich. 235, 612 N.W.2d 120 (2000), and In re Brown, 461 Mich. 1291, 1293, 625 N.W.2d 744 (1999), to require the articulation and application of explicit standards in order to avoid the type of disparate treatment highlighted above.

V. Conclusion
Because Mr. Fieger's statements were not political speech and contained objectively factual and provably false connotations, I cannot join the majority's order denying leave. Finally, I find the apparent disparity in disciplinary treatment troubling and believe it merits attention by the relevant disciplinary bodies and this Court.